Flint & Pere Marquette Railway Company v. Samuel H. Gordon.

*Railroads—Right of way over public lands after entry of homesteader—Relation from patent to date of entry—Pay for improvements.*

The rule that a court of equity is not the proper tribunal for determining the title to lands applies only where the legal remedy is plain and adequate; which is not the case if in the suit at law the title comes only incidentally under examination, and a decision for one party leaves an apparent title of record in the other.

Any grant by the United States must be inoperative as against another which by construction of law antedates it.

Railways, though not strictly "highways," like plank and macadamized roads, are highways within the meaning of U. S. Rev. Stat., § 2477. which grants the right of way for the construction of highways across the public lands.

A homestead entry vests no title, but gives a right of possession which may be perfected by continued occupancy and improvement; and if not so perfected, reverts to the government.

One who has perfected his homestead entry is entitled to a patent which relates back to the time when the entry was made, and takes date with it.

Under U. S. Rev. Stat., § 2477, granting to highways the right of way across the public lands, a patent is not necessary; the offer and its acceptance by the construction of the road are equivalent to a grant that is good as against the government, and also as against a subsequent patentee, unless the latter's patent antedates the grant by relation, or unless his equities preclude the acquisition of adverse rights.

The doctrine of relation is remedial, and its use is to prevent wrongs and punish trespasses; but it can never be so applied as to make wrong that which was innocent when done, or to divest rights acquired since the time from which the relation dates.

Whether a homesteader's inchoate title is such an interest as can be appropriated under the General Railroad Law by adversary proceeding—Q.

The construction of its road by a railway company under a public act granting the right of way across the public lands would be both a sufficient and an equitable consideration for the right of way.

A right of way perfected by a railway company under U. S. Rev. Stat. § 2477, cannot be defeated by mere relation back from a homesteader's subsequent patent to the time of his antecedent entry on the land.

A homesteader is entitled to compensation for improvements made on land over which a railroad company has afterwards obtained the right of way.

Appeal from Osceola. Submitted June 11. Decided October 8.

BILL TO QUIET TITLE to right of way. Defendant appeals.

*Wm. L. Webber* for complainant. Land merely entered as a homestead is not taxable, *Moriarty v. Boone Co.*, 39 Ia., 634, and any agreement by the occupant to sell any part of it nullifies his entry, Copp's Land Laws, 256; he is only a tenant at will and can at any time be removed by the government, 7 Cong. Rec., pt. iii., 2939–2942; occupation and improvement of public lands with a view to pre-emption does not give a vested right to the land, *Frisbie v. Whitney*, 9 Wal., 187; *Hutchings v. Low*, 15 Wal., 77; *Western Pacific Ry. Co. v. Tevis*, 41 Cal., 489. The grant of anything, as a right of way, implies a grant of whatever is necessary to make it effectual, Cooley Const. Lim., 63–4; *U. S. v. Fisher*, 2 Cr., 396; *M'Culloch v. Maryland*, 4 Wheat., 421; *Field v. People*, 2 Scam., 83; *Pomfret v. Ricroft*, 1 Saund., 322–3, notes; Congressional grants to railroad companies should be so construed as to best carry out the general policy of Congress towards railroads, *Missouri, Kansas & Texas Ry. Co. v. Kansas Pacific Ry. Co.*, 97 U. S., 491: 7 Rep., 65–7; the right of a railroad company to change its surveyed line can only be questioned by the United States or the State, *Queen v. Southern Pacific R. R.*, 3 Copp's Land Owner, 5; *Schulenberg v. Harriman*, 21 Wal., 45; acquisitions of land over which a right of way has been previously granted by Congress are subject to the exercise of this right, *Cent. Pac. R. R. Co. v. Dyer*, 1 Sawyer,

641; *McWilliams v. Bridges* (Neb.), 6 Rep., 340; even though it is only a floating right to be afterwards fixed by locating the road, *Det., Hills. & Ind. R. R. v. Forbes*, 30 Mich., 165; patents for land previously granted or reserved from sale are void, *Polk v. Wendal*, 9 Cr., 87; *Morton v. Nebraska*, 21 Wal., 660; *Minter v. Crommelin*, 18 How., 88; *Reichart v. Felps*, 6 Wal., 160; *Hobart v. Ford*, 6 Nev., 77.

*Geo. K. Newcombe* for defendant. A bill to quiet title does not lie at the suit of a claimant in possession who establishes a legal title, *Moran v. Palmer*, 13 Mich., 370; a pre-emptioner cannot be deprived of his land after entering upon it, if he complies with the law, *Terry v. Megerle*, 24 Cal., 625; *Boyce v. Danz*, 29 Mich., 146; *Lytle v. Arkansas*, 9 How., 323; *Cunningham v. Ashley*, 14 How., 377; *Chapman v. School Dist.*, Deady, 113; *Lamb v. Davenport*, 1 Sawyer, 609; 18 Wal., 307; even if he abandons the land, his rights can not be foreclosed without due process of law, *Hedley v. Leonard*, 35 Mich., 71; an inchoate title is property, *Delassus v. United States*, 9 Pet., 133; *Smith v. U. S.*, 10 Pet., 330; *Rice v. Railroad Co.*, 1 Black, 358; land lawfully appropriated to any purpose is severed from the mass of public lands and no subsequent law or proclamation will cover it, *Wilcox v. Jackson*, 13 Pet., 498; *Lawrence, Leavenworth & Galveston R. R. Co. v. United States*, 92 U. S., 733; *Witherspoon v. Duncan*, 4 Wal., 210; *Robertson v. Smith*, 1 Mont., 410; *Newhall v. Sanger*, 92 U. S., 761; interests intervening between the date of a grant and the identification of the land are given priority by the doctrine of relation, *Stockton v. Williams*, Walk. Ch., 120; 1 Doug. (Mich.), 546; *Dewey v. Campau*, 4 Mich., 565; *Johnson v. Ballou*, 28 Mich., 385; *Det. Hills. & Ind. R. R. v. Forbes*, 30 Mich., 174; *Busch v. Donohue*, 31 Mich., 481; *Harlow v. Iron Co.*, 36 Mich., 105; 9 Attorney General's opinions, 253; *Fremont v. United States*, 17 How., 542; *Baker v. Gee*, 1 Wal., 333:

*Railroad Company v. Fremont County,* 9 Wal., 89; *Railroad Company v. Smith,* 9 Wal., 95; *Heydenfeldt v. Daney Gold Co.,* 93 U. S., 634; *Cent. Pac. R. R. v. Nevada,* Copp's Land Laws, 424; *U. S. v. R. R. Bridge Co.,* 6 McL., 530; *Cal. N. R. Co. v. Gould,* 21 Cal., 255; *Alabama & Fla. R. R. v. Burkett,* 46 Ala. (N. S.), 569; *St. Joe & Denver R. R. v. Baldwin,* 7 Neb., 247.

COOLEY, J. The bill of complaint is filed in this case to quiet the title of complainant to the right of way now claimed and occupied for railway purposes across a certain eighty-acre lot of land owned and occupied by defendant in the county of Osceola.

The land belonged to the United States in 1868, and was entered by the defendant as a homestead in that year, and patented to him, on perfecting the proofs, in 1874. The complainant laid out its line across the land and constructed its railway over it in 1872. Some little improvement had then been made by the defendant and a portion of this was included within the strip of land taken for railroad purposes. Defendant protested against the action of complainant in crossing his land, and in 1875 brought action in trespass therefor, but this was afterwards discontinued and an action of the case commenced which was pending when the bill was filed. The other facts in the case are agreed upon as follows:

The first survey for the line of the Flint & Pere Marquette Railway was made in 1857.

The line of that survey passed through the county of Osceola and through the range of townships numbered seven west, through the northern part of township sixteen (16) north, being between six and seven miles south of the line which was afterwards adopted and upon which the railroad was constructed, through that range of townships.

The line of that survey in 1857 was the one which was filed during that year in the General Land Office at Washington, and which was accepted and approved by the Commissioner of the General Land Office and the Secretary of the Interior, as the line of the road for the

adjustment of the land grant which was made to the company. This line was about six miles distant from the land in controversy, and no other survey or plat of a line of road was ever filed by the Flint & Pere Marquette Railway Company in said land office till May 1872.

Afterwards and preparatory to construction, the company caused explorations to be made by and under the direction of William B. Sears, chief engineer, and the line of 1857 was found in that range of townships so hilly and expensive for construction that he ran other lines, but none was ever settled upon and adopted until 1870, when the survey was made upon the line where the road was afterwards constructed which was adopted by the company as the line for construction and upon the recommendation of the chief engineer as being the best line for cheapness of construction, and operation disclosed by his explorations. No line of road was ever marked across the land in controversy to be held by the railway company for its right of way, prior to the survey of 1870, and when the defendant made the entry of the north half of the southeast quarter of section four in township seventeen north range seven west in 1868, as stated in the bill, there was nothing on the land indicating a claim by the railroad company to any portion thereof. Shortly after the entry and during the same year he took possession of the land and resided upon it with his family, which residence has continued without interruption until the present time.

Prior to the survey of the railroad line across this land in 1870 the defendant had made some improvements, in the way of chopping and clearing, upon the northeast corner of said parcel,—had built thereon a log house and barn, and had constructed a rail fence on the east side and a brush fence on the other sides of such clearing.

The strip of land taken by the railway company, one hundred feet wide, is correctly described in the bill in this cause, and the area of said strip is there correctly stated.

The railway company, by its contractors and employees, took possession of said strip of land early in the year 1871, the choppers commencing their work of clearing at that point while the snow was yet upon the ground, and the grading was completed and the track laid so that trains passed across this land on the railroad as early as in September, 1871.

The railway company caused the track to be fenced at that point, the railway fences having been built also in 1871, and since the construction of the track across

said parcel and the construction of said fences the said railway company has been in the possession of said strip of land as and for its right of way, and has run trains thereon to the present time, as stated in the bill.

Of the three and twelve-one hundredths acres taken for right of way, about one-half had been chopped and cleared by the defendant before the construction of the road at that point was commenced, the other half being yet uncleared.

The company, by its contractors and employes, entered into possession of said strip of land against the will and under the protest of the defendant, the said railway company claiming (under the acts of Congress and the legislation of Michigan mentioned in the bill) a right to take possession of and use said strip of land for right of way as the owner under the grants aforesaid, and against the protest of the said defendant, which claim of right and ownership the company has continued to the present time.

The railway company after the construction of its road offered to pay the defendant the value of the labor expended by him in clearing the land. The defendant, however, claimed that he was the owner of that strip of land and by the construction of the railway thereon had suffered other injuries, and refused to negotiate on the basis proposed by the railway company, and has ever since the company has been in possession continued to make claim against the company as an intruder upon his rights.

Prior to the taking of possession and the construction of the road across this parcel of land, there had been no map filed by the officers of the company in the General Land Office at Washington, showing the line of road adopted across this parcel of land. Afterwards and in the month of May, 1872, the railway company caused to be filed in the office of the Commissioner of the General Land Office at Washington, a plat showing the line which was adopted and upon which the road had been constructed through the county of Osceola, including the land in question.

The said Flint & Pere Marquette Railway was constructed and the Governor's certificate of such construction made at the times in that behalf stated in the bill.

Hersey, to which point the road was constructed prior to the 16th of December, 1871, is, by the line of the road, about fifteen miles west of this parcel of land where the defendant resides, and the road was constructed from the east to the west.

The patent for said land was issued and delivered to defendant, and bears date Feb. 20, 1874, as stated in

the bill, and in the patent there is no exception of any strip for right of way, but the patent on its face is absolute for the entire eighty acres.

The strip of land in controversy was, at the time of filing the bill in this cause, of a value in that behalf stated in the bill.

The court below decreed that complainant be quieted in its title to the strip of land occupied as and for a right of way across defendant's land, and that defendant release to complainant all claim thereto so long as complainant shall desire to use the same for railroad purposes, saving to him only the right of reversion in case of non-use by complainant. Defendant appealed.

I. The right of complainant to file a bill in equity is denied on the ground that the remedy at law is ample, and all its rights might be determined and protected in the suit at law which was pending when the bill was filed. It is true that a court of equity is not a proper tribunal to determine the title to lands; *Devaux v. Detroit*, Har. Ch., 98; *Blackwood v. Van Vleet*, 11 Mich., 252; but this is so only when the remedy at law is plain and adequate. It is neither plain nor adequate when in the suit at law the title would only incidentally come under examination, and a decision in favor of one party would still leave an apparent title of record in the other. And such would be the case here: the apparent title of record is in the defendant, and it will still remain in him whatever might be the result of the suit brought by him at law. If the railroad company shall succeed, its title will nevertheless remain clouded, and nothing short of a decree that shall distinctly declare and affirm its right to the strip of land in dispute can constitute an effectual remedy. The bill, therefore, was properly filed.

II. It is contended on the part of the defense that the railroad company has no rights whatever in the land; first, because the United States, the original pro-

prietor, has never undertaken or assumed to give any, and consequently the entrance by the railroad company to construct its road, if the United States then remained the owner, was an unlawful intrusion ,and a trespass; and second, because by the patent from the United States to the defendant the title in fee simple was transferred, not as of the date of the patent, but by relation as of the date when the defendant made his homestead entry. If the defense shall succeed in establishing either of these positions, it is obvious that the bill must fail, for the complainant asserts no rights, except under grant by the United States, and any such grant must be inoperative as against another which by construction of law antedates it.

III. Complainant relies upon three separate statutes, either of which is sufficient for its purposes if it applies. These are:

1. The act of Congress of August 4, 1852, entitled "An act to grant the right of way to all rail and plank roads and macadamized turnpikes passing through the public land belonging to the United States." (1 Lester's Land Laws, 189.)

2. The act of Congress of July 26, 1866 (2 Lester's Land Laws, 181), the section relied upon being section 2477 of the Revised Statutes of 1878.

3. The act granting lands to Michigan in aid of the construction of certain railways therein, approved June 3, 1856.

The benefits of the act first named were by its terms restricted to roads which should be "begun within ten years from and after the passage of this act, and completed within fifteen years thereafter." It does not appear that complainant fulfills this condition.

The argument based on the last named act we have not found it necessary to examine. The section of the act of 1866 on which reliance is placed declares "that the right of way for the construction of highways over

public lands, not reserved for public uses, is hereby granted." This is not limited in time and seems to be amply sufficient in scope if railways are highways within its meaning. This is disputed.

There is no doubt that when the term "highways" is used in legislation the common highways of the country are generally to be understood. But this is not universally true. There are other highways than these, and the sense in which the word is employed must be determined by the end which the legislation has in view, and by the context. Here a right of way is given for highways, and the question is whether the purpose was to give the right for other roads than the common wagon roads of the country, or other roads open to the public for use in the same ways.

The subject is not free from doubt, but we incline to think, and shall hold that all public ways were intended. A forcible reason for this conclusion is that we can conceive of no considerations operating to induce Congress to grant the right of way for wagon roads, and not grant it for other public ways. The States might perhaps provide for taking it as well across the lands owned by the United States as across lands owned by individuals; *United States v. Railroad Bridge*, 6 McLean, 517; *United States v. Chicago*, 7 How., 185: but a condition precedent to such taking would be that compensation should be made, and it has never been the policy of the United States to demand compensation for permitting roads to be opened across the public lands. This is evidenced by many special acts granting rights of way, as well as by the act of 1852, and it is matter of notoriety that in the absence of legislation roads have been freely laid out across the public lands, without objection or controversy, wherever the lands were not appropriated or desired for other public uses. Such roads facilitate the settlement of the country, and benefit the neighborhood, and in both particulars they further a general policy of the Federal government. But they also tend to increase the

value of the public lands, and for this reason are favored. And what the common highways of the country accomplish in this direction, the railroads of the country accomplish to a much greater extent.

As bearing upon the construction of the act of 1866 we may well take notice of the fact that at that time the United States were seeking to stimulate and encourage the construction of railroads in the newer sections of the country by making large grants of land to the projectors.    Two motives may be said to have influenced this action: *First*, the general benefit to the country by encouraging new settlements; *second*, the general benefit to the interest of the United States as proprietor of other lands, by giving to such other lands additional market value and creating increased demand for them. It would certainly be very remarkable if, while thus pursuing a policy of liberal encouragement to railroads the United States should purposely withhold a favor so unimportant to the government as permission to cross the public domain; a permission, too, almost certain, so far as it had influence, to be beneficial. It would be specially remarkable if in so withholding this privilege the United States were in fact discriminating against this form of thoroughfare.

It is true railroads are not in the proper sense of that term highways, but they have been frequently called highways in the decisions of the Federal Supreme Court, *Rogers v. Burlington*, 3 Wall., 654, 663; *Railroad Company v. County of Otoe*, 16 Wall., 667, 673.   It is not an unreasonable inference that the Legislative Department of the government may sometimes have employed the word in the same sense.   Plank roads and macadamized roads, which are open to use by the whole public with their own teams and vehicles, are highways in the strictest sense, and yet these, which with railroads were provided for specially by the act of 1852 are only provided for now by the act of 1866.   We may well suppose that the act of 1852 was limited in terms to the

roads constructed by private companies, because the tacit acquiescence by the United States in the construction of highways by the States and Territories over its lands, made further provisions unnecessary, but that that act was suffered to expire because subsequently it was deemed best by a general provision in the act of 1866 to embrace all public ways; thus at once giving the sanction of law to the custom of taking public lands for common wagon roads, and providing for other roads also. This would account for the fact, which otherwise would at least seem very strange, that Congress suffered the limitation in time imposed by the act of 1852 to run out, without making any new or further provision for the special benefit of the companies which by that act were favored. All the considerations which should lead to the assistance of such companies, so far as the giving of a right of way would assist them, are as forcible to-day as they ever were; they were not peculiar to the twenty-five years following the enactment of the law of 1852.

We shall hold, therefore, that the act of 1866, which gives a right of way for all highways, embraces within its intent railways, and that by force of it the complainant was entitled to a right of way across the lands in dispute, unless the homestead entry of defendant constituted an impediment.

IV. The homestead entry vested no title in the defendant, but it gave to him under the law a right of possession which he might perfect by continued occupancy and improvement. If he failed so to perfect it, what right he had reverted to the United States. If he perfected it, he was entitled to a patent, which related back to the time when his entry was made, and took date with it. *French v. Spencer*, 21 How., 228; *Shepley v. Cowan*, 91 U. S., 337; *Johnson v. Ballou*, 28 Mich., 379. This is a statement of familiar and undisputed principles.

But in this case there is what seems at first blush to be a conflict of grants. The defendant made his entry first, but the complainant completed its road over the land before the defendant obtained his patent. To acquire the benefit tendered by the act of 1866 nothing more was necessary than for the road to be constructed: no patent is required in such cases, but the offer and the acceptance taken together are equivalent to a grant. The complainant, therefore, by accepting the offer of the government, obtained a grant of the right of way, which was at least perfectly good as against the government, and must be held to be perfectly good as against this defendant unless his patent antedates it by relation, or unless the equities springing from his possession and improvement would preclude any right being acquired adversely.

Some equities the defendant unquestionably has, but we do not think he is entitled to what he claims from the doctrine of relation. That doctrine is remedial, and its use in the law is to prevent wrongs and punish trespasses. *Stout v. Keyes*, 2 Doug. (Mich.), 184; *Ballou v. O'Brien*, 20 Mich., 304. As has been repeatedly declared in this court, it can never be so applied as to make that a wrong which was innocent when done, or so as to divest rights which, by the sanction of law, have been acquired since the time from which the relation dates. *Bacon v. Kimmel*, 14 Mich., 201; *Whipple v. Farrar*, 3 Mich., 436; *Blackwood v. Brown*, 29 Mich., 483. Now leaving out of view for the present the equities of the defendant, we cannot say that complainant was guilty of any wrong when going on to construct its road across this land. There was lawful authority for building the road, and we may assume that the crossing of this land was a necessity. It is not very clear that under the general railroad law so peculiar an interest as that of the defendant could have been appropriated by adversary proceedings, and it is certain that complainant could have been under no obligation to proceed to an

appropriation of the interest of the United States, if that interest was freely granted by that act of 1866, as we think it was. Complainant accepted the offer of that act, and the construction of its road under the offer would be not only a sufficient but also an equitable consideration. And when the right was thus perfected, we do not think it could be defeated by any act of relation springing from the accomplishment of something subsequently.

V. That this appropriation may operate as a hardship to the homesteader is unquestionable. That he should have some remedy against this hardship is equally clear. The improvements upon the land are certainly his own, and if these or any portion thereof are appropriated, he is entitled to compensation. What right of forcible appropriation or resistance, or what remedy either party might have had as against the other in case the entry of the company for the purpose of building its road had been contested, is not a question here. The complainant has built its road, and we find that it has lawfully acquired the right of way. Nothing now remains to be considered but the question of compensation.

The defendant made his entry subject to have it defeated, so far as the right of way was concerned, by any subsequent construction of a railway before his patent was earned. But as he could not know that any part of his land would be needed or taken, he was in the proper exercise of his rights when he went on to make improvements. We should infer from the statement of facts that those actually made within the limits of the right of way were inconsiderable, and for these the complainant offered to make payment. The refusal of defendant to negotiate created the necessity for this litigation, but he did not thereby forfeit his right. The decree should have allowed the defendant to take a reference to compute the value of the improvements made

within the limits appropriated by complainant, and it will be modified in this court so as to permit that to be done.    The defendant was properly charged with the costs of the circuit court, but costs will be awarded to him in this court, and the costs on a reference will be discretionary.    There ought, however, to be no difficulty in dispensing with a reference by agreement.

The other Justices concurred.