GAGE v. SANBORN.[1]

1. SUMMARY PROCEEDINGS—LAND SOLD UNDER MORTGAGE—SUFFICIENCY OF COMPLAINT.

In summary proceedings under 2 How. Stat. §§ 8295, 8296, to recover the possession of land sold on mortgage foreclosure, and held after the time for redemption has expired, a complaint alleging that defendant is in possession of the premises therein set forth, and holds the same unlawfully and against the rights of complainant, who is lawfully entitled to the possession of the same, is sufficient.

2. SAME—VALIDITY OF FORECLOSURE—JURISDICTION.

The questions of the validity of the foreclosure, and whether the premises had been redeemed, may be tried in such proceeding. Such a case is not within the rule that conflicting titles to realty cannot be thus litigated.

3. SAME—NOTICE TO QUIT.

Where the proceeding is begun promptly after the expiration

[1] Rehearing denied October 1, 1895.

106   269
107   466
106   269
116   691
106   269
119   221
106   269
128   297
106   269
s64NW 321
e132  ⁶650
106   269
138   ¹⁰412
106   269
154   ²242

of the time for redemption, the defendant is not entitled to three months' notice to quit.

4. BANKS—FORECLOSURE OF MORTGAGE BY ADVERTISEMENT.

Under 1 How. Stat. § 3142, 3 How. Stat. § 3208b, providing that it shall be lawful for banks to purchase, hold, and convey real estate mortgaged to them in good faith, and such as they shall purchase at sales under judgments, decrees, or mortgage foreclosures under securities held by them, a bank can foreclose a mortgage by advertisement.

5. SAME—AUTHENTICITY OF NOTICE OF SALE—EVIDENCE.

If the authenticity of a notice of sale under proceedings to foreclose a mortgage by advertisement in the name of a bank can be questioned at all, the fact that the foreclosure was authorized by the directors may be shown by parol.

6. MORTGAGE—STATUTORY FORECLOSURE—SALE IN PARCELS.

One who attacks the validity of a foreclosure sale on the ground that the lands were sold as one parcel has the burden of proving that they were not so occupied, unless that fact is apparent from the description in the mortgage.

7. SAME—SALE TO MORTGAGEE—EXCESSIVE DEMAND.

A sale to a mortgagee upon statutory foreclosure for an amount in excess of that legally demandable, but claimed by him to be due, is not invalid, in the absence of proof that the surplus was not paid to the officer.

8. MORTGAGE—ASSIGNMENT PENDING FORECLOSURE.

The assignment of a mortgage after a sale has been made on statutory foreclosure, though before the period for redemption has expired, will not operate to annul the proceedings. *Niles* v. *Ransford,* 1 Mich. 338, distinguished.

9. MORTGAGE FORECLOSURE—TITLE OF PURCHASER—QUITCLAIM.

A purchaser of land at a sale on mortgage foreclosure acquires an equitable interest in the premises, which he may convey by quitclaim deed prior to the expiration of the redemption period, and which, when so conveyed, will ripen into a legal title in his grantee, if the land is not redeemed.

10. SAME—DUTY TO PAY MORTGAGE—REDEMPTION.

A legal title acquired by virtue of a foreclosure sale cannot be attacked in an action at law on the ground that the party claiming thereunder acted as agent for one whose duty it was to pay the mortgage, and that, therefore, the transaction amounted merely to a redemption.

11. MORTGAGE—ABSOLUTE CONVEYANCE AS SECURITY—ASSUMING PRIOR INCUMBRANCE.

> The fact that, in a deed executed as security only, the grantee assumes and agrees to pay a prior mortgage, will not necessarily preclude him from acquiring title under a sale on foreclosure of such mortgage.

Error to Saginaw; Wilber, J. Submitted June 7, 1895. Decided July 13, 1895.

Summary proceedings before a circuit court commissioner by William G. Gage against Florence A. Sanborn to obtain possession of certain premises. Defendant prevailed before the commissioner, and plaintiff appealed to the circuit court. From a judgment for plaintiff, defendant brings error. Affirmed.

*L. T. Durand* and *G. W. Davis,* for appellant.

*William G. Gage* and *Camp & Brooks,* for appellee.

HOOKER, J. The defendant being in possession of certain premises, described as lots 3 and 10, and the north half of lots 2 and 11, of block 70, except two rooms on the second floor of the house thereon (which rooms were occupied by Marriette C. Sanborn), summary proceedings were begun by the plaintiff to obtain possession of the same. From a judgment in his favor, the defendant has appealed.

The record shows that the defendant's husband, Lewis D. Sanborn, being at the time the owner of the entire premises, executed a mortgage thereon for $5,000, in which the defendant joined, and delivered the same to the Savings Bank of East Saginaw, as collateral to two notes given said bank by said Lewis D. Sanborn. Said mortgage contained the usual power of sale, was executed on January 9, 1890, and was recorded the following day. On December 3, 1890, Sanborn and the defendant joined in a warranty deed of the premises to Sanborn's mother,

Marriette C. Sanborn, subject to the mortgage mentioned, said deed containing the following provision, viz., "which said mortgage said second party assumes and agrees to pay." The consideration expressed in the deed was $6,000. Sanborn thereafter abandoned his wife, leaving her upon the premises, a portion of which was their homestead. Two or more other buildings stood upon the half lots. Litigation between Marriette and Florence A. Sanborn followed, and this court held that the instrument given to the former was by way of security, and, therefore, a mortgage. The opinion of the court will be found reported in 104 Mich. 180. Meantime Marriette C. Sanborn had paid $3,000 upon the mortgage of the bank, previous to January 11, 1893, at which time she informed the officials of the bank that she would pay no more upon the mortgage. This was communicated to the bank by the plaintiff, who said that the bank could foreclose if it wanted to. This it did, by advertisement, and at the sale bid in the premises,—the half lots, 2 and 11, with the two buildings thereon, described in the notice of sale as "Parcel 1," being sold first, for $687.52; and the remainder of the premises described, called "Parcel 2," upon which defendant lived, being sold for $2,500. The sheriff's deed was dated August 5, 1893. July 31, 1894, the bank executed an assignment of its interest in the mortgage, and a quitclaim deed of its interest in the premises, to the plaintiff, who instituted these proceedings to obtain possession, on August 9, 1894.

The point is made that the complaint is insufficient. In substance, it alleges that the defendant is in possession of the premises therein named, and holds the same unlawfully and against the rights of complainant, who is alleged to be lawfully entitled to the possession of the same. Under the decisions in the cases of *Caswell* v. *Ward*, 2 Doug. (Mich.) 374, and *Bush* v. *Dunham*, 4 Mich. 344, there might be room for this contention; but counsel have apparently overlooked the later cases of *Bryan* v.

*Smith,* 10 Mich. 229, and *Moody* v. *Seaman,* 46 Mich. 76, which hold such a complaint sufficient.

We next consider the validity of the foreclosure proceedings:

*The power of sale:* It is said that the bank is a corporation of limited powers, and could not foreclose the mortgage by advertisement. No question is raised over the right of the bank to own this mortgage; and, if it may, it must have the power to foreclose it by advertisement, if it can be so foreclosed while it is such owner. Counsel concede that some of the courts hold that " a corporation may execute such trusts as are coupled with an interest in the thing granted, or upon which the power is to operate," but say that "it is fundamental that they cannot execute a power not coupled with an interest in that upon which the power is to operate." And they argue, upon the authority of *Johnson* v. *Johnson,* 27 S. C. 309, that "a mortgagee's interest in the property mortgaged is only in the proceeds of the property mortgaged, and it would not therefore be coupled with any interest in the equity of redemption, to which the contract or power of sale relates." But, if this can be said to be true in this State (see *Lee* v. *Clary,* 38 Mich. 226, and *Niles* v. *Ransford,* 1 Mich. 338), we think the statute confers the power upon banks to foreclose by advertisement.

1 How. Stat. § 3142, provides that—

"It shall be lawful for any such association to purchase, hold, and convey real estate for the following purposes:   *    *    *

"2. Such as shall be mortgaged to it in good faith, by way of security, for loans previously made by, or moneys due to, such association.   *    *    *

"4. Such as it shall purchase at sales under judgments, decrees, or mortgages held by such association," etc.

Again, 3 How. Stat. § 3208b, provides that—

"A bank may purchase, hold, and convey real estate for the following purposes, but no other:   *    *    *

106 MICH.—18

"3. Such as it shall purchase at sale under judgments, decrees, or mortgage foreclosures under *securities held by it*; but a bank shall not bid at any such sale a larger amount than to satisfy its debt and costs."

Counsel for plaintiff forcibly suggest that the words "mortgage foreclosures" are unnecessary, and can be given no effect, if banks cannot foreclose by advertisement, as purchases at mortgage sales in other cases would be covered by the word "decrees."

*Signature of the notice of sale:* Objections are made to the validity of the sale for the alleged reasons: (1) That the notice was not signed by the mortgagee; (2) that it does not appear that the directors of the bank authorized the foreclosure. To the notice as published was affixed the name of the bank, also the name of the attorney. The evidence showed that this was done by the consent and authority of the directors, and the bank availed itself of the advantages arising from, and the results of, the sale. We are not cited to authority for the proposition that all the details of every-day business in banks must be considered in directors' meeting, and their action be spread upon the journal of the meeting. Such a practice would complicate the business of banking, and be at variance with the ordinary course of business as it is commonly done. To go further, and allow a debtor to question the regularity of proceedings on the part of the bank in such cases, would have little reason to support it. The notice was over the name of the bank, and informed the public of the prospective sale. It contained the statutory requisites of a valid notice, and, if its authenticity could be questioned, there is no reason why it should not be vindicated by parol testimony, the same as though the notice were that of a private person who had authorized an attorney to foreclose a mortgage. Unreasonable restrictions and intendments against statutory foreclosures should not be favored. *Lee* v. *Clary*, 38 Mich. 229.

*Sale in parcels:* It is next contended that the sale is invalid because the half lots included in "Parcel 1" were sold together. The mortgage described the premises as lots 3 and 10 and the north half of lots 2 and 11. From this description it does not appear that the land is not adjoining and used as one parcel. If so, it was proper to sell as one. *Larzelere* v. *Starkweather*, 38 Mich. 104; *Durm* v. *Fish*, 46 Mich. 314. The cases cited by counsel for defendant[1] are not at variance with this rule. If they were not adjoining, it devolved upon the defendant to prove it. *Harris* v. *Creveling*, 80 Mich. 252. But it was conceded that they were used as two, and the sale was made accordingly.

*Excessive bid:* It is said that the amount claimed to be due by the bank was excessive. The amount is not stated, but seems to have been the cost of one insertion of the notice of sale, which was published 13 times, the last being unnecessary. *Gantz* v. *Toles*, 40 Mich. 725; *Bacon* v. *Kennedy*, 56 Mich. 329. In a case where the mortgagee bid an excessive amount, which was claimed to be due, and failed to pay it over to the sheriff making the sale, the mortgagor was permitted to redeem on payment of the amount of the bid less the excess. *Louder* v. *Burch*, 47 Mich. 109. There is, however, no presumption that the sum bid was not paid over, and we are cited to no proof upon the subject. *Millard* v. *Truax*, 47 Mich. 251.

Having reached the conclusion that the foreclosure proceedings were valid, we will next inquire whether the purchase ripened into a title in plaintiff. This depends upon two questions: (1) Did the assignment of the mortgage operate to annul the foreclosure? (2) Were the quit-claim deed and the assignment adequate to convey a title, redemption not having expired at the time of their delivery? In *Niles* v. *Ransford*, 1 Mich. 338, it was held that a transfer of a mortgage pending the advertisement of a notice of sale put an end to the proceeding. But, after

---

[1] *Lee* v. *Mason*, 10 Mich. 403; *Keyes* v. *Sherwood*, 71 Mich. 516.

the sale is made, we discover no reason for holding that it would have such effect. Nor are we impressed by the claim that such assignment and quitclaim deed were ineffective to pass the interest of the bank. The bank had an equitable interest in this land as purchaser. If it had no interest, and had given a warranty deed, it would be sufficient to pass after-acquired title. It is said that "the bank's interest at that date was but the interest of a mortgagee, and it had no title upon which the quitclaim deed could have operated." Counsel add that this seems to be the general doctrine of the courts, but they cite only Minnesota cases to sustain the proposition. The purchaser at the sale pays his money, and acquires an equitable title to the land, which time will ripen into a legal title, subject only to the equitable right of redemption. That is assuredly an equitable interest in land, and such may be conveyed by quitclaim deed. That an equitable title may be so conveyed is recognized in *Frost* v. *Missionary Society*, 56 Mich. 69; *Thayer* v. *McGee*, 20 Mich. 195. The cases from Minnesota do not go far towards sustaining the defendant's contention. The case of *Donnelly* v. *Simonton*, 7 Minn. 167, holds that a mortgage of real estate is not a conveyance of the legal title, which—i. e., the legal title —only vests after expiration of the period for redemption; the case of *Horton* v. *Maffitt*, 14 Minn. 289, holds explicitly that a mortgagee, even before foreclosure, has an equitable estate or interest, which is subject to defeat by redemption; while *Loy* v. *Insurance Co.*, 24 Minn. 315, lays down the rule that a purchase at foreclosure sale is not such a change in title as to invalidate an insurance policy, when redemption had not expired. None of these cases assert that the purchaser at the sale acquires no interest in the land; and, while assignment before sale invalidates the pending proceedings to foreclose by advertisement, the reason is that the power and the interest cannot be separated. After the sale has been made, and the sheriff's deed made and filed, the power has been

exercised, and ceases. The purchaser's equitable interest has accrued, and he may deal with it as with any other equitable interest. Jones, Mortg. § 1832; *Niles* v. *Ransford, supra.*

The litigation between Sanborn's wife and mother, already alluded to, was upon a bill filed by the wife to set aside the deed to the mother. This deed was held to be an equitable mortgage, and the cause was returned to the circuit for an accounting, it being determined that the amount paid by Marriette, the mother, upon the bank mortgage, should be included in her claim against the property. A year was allowed the complainant for redemption. Upon the trial of the present case before the circuit court, the defendant, Florence A. Sanborn, asserted and attempted to show that the consideration for the quitclaim deed from the bank to the plaintiff was paid by or for the benefit of Marriette C. Sanborn, his client. Several questions were asked which, if answered, might have brought out the fact, but the court did not permit it. If this testimony was admissible, it was upon the theory that the purchase of the bank's interest amounted to a redemption by Marriette C. Sanborn, who had accepted a deed—*i. e.,* an equitable mortgage—in which it was provided that she should pay this bank mortgage, and that, it being a duty owed to the mortgagor, she could not evade it by claiming title through foreclosure. Had the deed to Marriette not been questioned, a court of equity would have held Marriette primarily liable for a deficiency, in case of foreclosure of the bank mortgage, as between herself and son, Lewis D. Sanborn; but this would not prevent the purchaser at the sale from acquiring a valid title, whether the foreclosure was in chancery or by advertisement. Had this plaintiff purchased these premises and received a deed upon foreclosure, the only remedy available to the defendant would be a bill to redeem or to set aside the deed, if it was the mother's duty to pay the mortgage, upon the ground

of a fraudulent purchase by Marriette C. Sanborn, through her agent, Gage. She could not question the legal title conveyed by the deed in an action at law, like ejectment or summary proceedings. A court of equity only could declare this purchase from the bank a redemption. Furthermore, the construction given to the deed to Marriette C. Sanborn is hardly consistent with the defendant's theory that redemption of this mortgage was a part of the consideration for her deed from Lewis D. Sanborn. The opinion expressly states that all payments made upon this mortgage by her should be a lien upon the land, and should be made a part of an accounting, with a view to redemption by this defendant, and it indicated no duty on the part of Marriette C. Sanborn to pay the remainder upon the mortgage; and, if it was not, she was at liberty to purchase the foreclosure title. All of these questions are important as bearing upon the right of defendant to redeem, but they have no bearing upon the legal title, which vested by the foreclosure deed, subject, of course, to the power of a court of equity to set the same aside or permit redemption in a proper case.

The defendant's contention is, in substance, (1) that the foreclosure proceedings were defective for the reasons stated; (2) that the plaintiff acquired no title because of a redemption. We have discussed both propositions, but the further claim is made that these claims raise a question of title, which cannot be tried in this proceeding. It is true that questions of title cannot be tried in summary proceedings; and, when it appears that the decision must turn upon a question of adverse title, the case must be dismissed. *Butler* v. *Bertrand*, 97 Mich. 59, and cases cited. But this must be understood to mean a question of legal title, and it must be raised by the evidence offered in the case. If this were otherwise, a mortgagor could always defeat summary proceedings by denying the validity of the foreclosure or asserting that the premises had been redeemed. Again, this proceeding is brought under a

statute which authorizes it "when any person shall continue in possession of any premises sold by virtue of any mortgage or execution, after the expiration of the time limited by law for redemption." The questions to be tried before the commissioner under this statute in a foreclosure case are: (1) The fact of the mortgage sale and its validity; (2) the holding over after expiration of the period of redemption. If these questions cannot be tried by the commissioner the statute is farcical, as jurisdiction would always be lost as soon as a plausible claim of invalidity of the sale should be raised. Hence a mortgagor is permitted to question the validity of the sale in this proceeding, and the same would be true in cases of execution sales. The proceeding lies against the person in possession holding under the equity of redemption, and it will not lie against one holding under a paramount or adverse title. *Brown* v. *Martin,* 49 Mich. 565. In the cases of *Riggs* v. *Sterling,* 51 Mich. 157, and *Mulder* v. *Corlett,* 54 Mich. 80, where it was held that the commissioner had not jurisdiction, the defendants claimed homestead rights, in opposition to, and as paramount to, the title derived from sheriff's sales on execution against the defendants. These cases do not attack the regularity of the proceedings themselves, but raise a question dependent upon extrinsic facts, constituting a legal defense in a proper tribunal, viz., an adverse claim of a title paramount to the levy; at least, this seems to have been the view taken in *Riggs* v. *Sterling,* and this distinction is intensified by the dissenting opinion of Mr. Justice Cooley in that case.

The further point is made that the defendant was entitled to a three months' notice to quit under the statute. The proceedings were begun promptly after redemption expired, and there is no room for the claim that plaintiff assented to continued occupancy, if that would make any difference. We think defendant was not entitled to notice. *Allen* v. *Carpenter,* 15 Mich. 25.

We think this covers the important questions raised, and our conclusion is that the judgment must be affirmed. Ordered accordingly.

The other Justices concurred.