SHERWIN A. HILL, SPECIAL ADMINISTRATOR OF THE ESTATE OF JOHN R. McNAUGHTON, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 92195. Promulgated August 9, 1939.

*Thomas H. Adams, Esq.*, for the petitioner.
*Stanley B. Anderson, Esq.*, for the respondent.

378

## OPINION.

BLACK: The loss which the taxpayer deducted on his income tax return for the year 1934 was $10,748.48. The Commissioner in his determination of the deficiency allowed $3,045.58 of this loss as a capital loss under section 117 (a) of the Revenue Act of 1934. The Commissioner in his deficiency notice stated as follows:

A deduction of $10,748.48 claimed on your original return, representing loss resulting from your surrender of property to the mortgagee on a quit claim deed, has been disallowed and a capital net loss of $3,045.58, (30% of $10,151.94, revised loss claimed on amended return), has been allowed for the reasons stated herein.

The parties now agree that the taxpayer's loss from the transactions in question was $9,355.95, instead of the amounts which he deducted in his original return and his amended return.

We think that, under decisions of the Board and the courts which we shall cite hereinafter, petitioner must prevail in his contention that the loss in question was an ordinary loss and deductible in full under section 23 (e).

We think that, under the facts which we have recited in our findings, this case falls within the purview of our decisions in *C. Griffith Warfield*, 38 B. T. A. 907; *H. L. Rust, Jr.*, 38 B. T. A. 910 (petition for review dismissed May 29, 1939, C. C. A., 4th Cir.); and *Lloyd Jones*, 39 B. T. A. 531.

There is one fact in the instant case which was not present in either of the three cases cited. In the instant case, several months after the mortgage foreclosure sale, the taxpayer and his wife executed a quitclaim deed to the parties who were the purchasers at the sheriff's sale. But we think this fact is without controlling significance, in view of the fact that the taxpayer received no consideration for the execution of the quitclaim deed.

It is the general law of mortgages that, where the mortgaged property is sold for an amount equal to the debt, the debt is extinguished and the mortgagor after such sale has no personal liability on the debt. See 2 Jones on Mortgages, sec. 1216. Not only is this the general law of mortgages, but it is also the law in Michigan, where this property was located and this mortgage was made. See *Moore* v. *Smith*, 95 Mich. 71 (1893), in which case the court, at page 65, said:

While it is true that a sale on statutory foreclosure satisfies the debt secured by the foreclosed mortgage to the extent of the proceeds of the sale and thus far releases the personal obligation, yet any party redeeming gets such an interest in the land as is necessary to protect him.

Therefore, it seems clear that, when on January 10, 1934, the mortgaged property was sold at a sheriff's sale for $6,610.18, which amount equaled the balance due on the mortgage note at the time of sale, plus interest due, taxes, and costs of sale, taxpayer was no longer personally liable on the debt. The debt itself was extinguished.

But under Michigan law the taxpayer, notwithstanding the sheriff's deed to the purchasers, dated January 10, 1934, retained legal title to the land until his right of redemption expired, which was one year thereafter. A purchaser on foreclosure sale, therefore, acquires no legal title to the realty, but only a right to be vested with legal title when the deed executed at the time of the foreclosure sale becomes finally effective at the end of the redemption period. The relevant provisions of the statutory law of Michigan on foreclosure of mortgages and the extinction of the right of redemption after foreclosure

are sections 14433, 14434, and 14435, Michigan Compiled Statutes, 1929.

As to the nature of the interest which the mortgagor holds after the foreclosure sale and before the period of redemption has expired, the Michigan courts have held that it is a right of redemption which takes the place of his former equity of redemption held before the foreclosure sale. The court said in *Roff* v. *Miller* (1915), 189 Mich. 558; 155 N. W. 517, at pages 518, 519:

> * * * It is now settled that the purchaser, at a foreclosure by advertisement, ordinarily acquires an equitable interest in the land which he may, during the period given for redemption, transfer in full to another. And that his assignee, if there is no redemption, will take the legal title when it matures exactly as the original bidder himself would have taken it. *Gage* v. *Sanborn*, 106 Mich. 269; 64 N. W. 32. * * * Such legal title does not vest at once upon the auction sale on statutory foreclosure (Jones on Mortgages, par. 1884), but only at the expiration of the period allowed for redemption. Until the end of that period the foreclosure proceedings may be abandoned, if the parties choose to do so, (*Dodge* v. *Brewer*, 31 Mich. 277), or a subsequent mortgagee may still demand an assignment of the mortgage. * * *

Therefore, the effect of the quitclaim deed which the taxpayer and his wife executed to Elizabeth S. Merritt and Ruth Sherrill on July 31, 1934, was simply to place the legal title in those who already held the equitable title by reason of the purchase which they made at the sheriff's sale. No consideration passed from Elizabeth S. Merritt and Ruth Sherrill to taxpayer in exchange for the execution of the quitclaim deed. It is true that the quitclaim deed recites, among other things, that it is given "by John R. McNaughton and Edna T. McNaughton, his wife in consideration of their release from all liability under a certain mortgage * * *."

But as we have already pointed out, McNaughton had already been released from all liability under the mortgage by reason of the fact that the mortgaged property sold for sufficient to pay off and satisfy in full the mortgage indebtedness, plus taxes, costs, etc. In view of this fact, the above quoted recital in the deed is without controlling effect. The effect of the execution of the quitclaim deed in question was simply to ripen the equitable title of the purchasers into legal title by ending the possibility of the exercise of the taxpayer's right of redemption. It fixed definitely his time for taking the loss which had resulted from the foreclosure sale but which he could not take as a deductible loss until his right of redemption had expired. Cf. *J. C. Hawkins*, 34 B. T. A. 918; affd., 91 Fed. (2d) 354. It seems to us that the situation with reference to the execution of this quitclaim deed by the taxpayer and his wife is no different in its effect from that which we had before us in *Commonwealth, Inc.*, 36 B. T. A. 850. In that case, the corporate owner of realty, subject

to a mortgage upon which the owner was not personally liable, deeded the property to the mortgagee without consideration and thereby fixed its loss. We held that the loss so sustained was an ordinary loss, deductible in full, and was not a capital loss subject to the limitation under section 117 of the Revenue Act of 1934.

In the instant case, as we have already endeavored to point out, after the foreclosure sale on January 10, 1934, taxpayer had no personal liability on the mortgage debt and his only interest was a right of redemption which interest was similar in its consequences to the rights of the taxpayer in the *Commonwealth* case to secure title to the land by the payment of the mortgage subject to which the corporation had purchased the land.

We hold in the instant case, as we held in the *Commonwealth* case, that "Inasmuch as there was in fact no consideration to the petitioner the transfer of title was not a sale or exchange. The execution of the deed marked the close of a transaction whereby petitioner abandoned its title" (citing authorities). Cf. also *C. G. Ganopuls*, 39 B. T. A. 1120.

The case of *Betty Rogers*, 37 B. T. A. 897; affd., 103 Fed. (2d) 790, is distinguishable from the instant case for the reason that in the *Rogers* case, at the time the grant deed was executed by Will Rogers and his wife, Betty Rogers, in exchange for the surrender and cancellation of their promissory note for $38,000, the mortgage had not been foreclosed and the taxpayers had a personal liability upon the mortgage note and consequently the release and cancellation of that liability constituted valuable consideration to the taxpayers for the deed which they executed.

On the strength of the authorities cited above, we hold for petitioner on the only issue submitted to us for decision. The facts show a smaller loss than the taxpayer deducted on his income tax return.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

TURNER, dissenting: In my opinion the conclusion of the Board that the loss herein was not a loss sustained "upon the sale * * * of a capital asset" and therefore not subject to the limitations of section 117 of the Revenue Act is directly contrary to the plain wording of the statute. Although I have previously expressed my dissent to such a conclusion, in *C. Griffith Warfield*, 38 B. T. A. 907, and *H. L. Rust, Jr.*, 38 B. T. A. 910, which on this point appear to be indistinguishable from the instant case, I trust that a restatement and amplification of my views may not be regarded as out of place inasmuch as the question is present in such a great number of undecided cases and is so clearly and pointedly presented here.

There is no contention on the part of the petitioner that to McNaughton the real estate or his interest therein did not constitute a capital asset, nor that the loss sustained by him did not result from the disposition of or parting with that capital asset. The issue, accordingly, is narrowed to the single question as to whether or not the loss was sustained "upon the sale or exchange" of the said property.

McNaughton and Palmer purchased the real estate in question from Marjorie B. Moreland for $28,000, which amount was paid in full on or before June 9, 1925. Of the final payment, however, $16,500 was procured by a loan from the Detroit Trust Co., and McNaughton and Palmer gave a mortgage on the said real estate as security for that loan. After the principal amount of the loan had been reduced to $5,263.10, McNaughton and the Palmer Co., assignee of Palmer, defaulted and by virtue of a power granted in the mortgage and in accordance with the provisions of the Michigan statutes governing such transactions,[1] the property was sold by the sheriff at

[1] [Compiled Laws of Michigan, 1929.]

14425. *Foreclosure of mortgages containing power of sale; right.* Section 1. Every mortgage of real estate, containing therein a power of sale, upon default being made in any condition of such mortgage, may be foreclosed by advertisement, in the cases and in the manner hereinafter specified.

14426. *Same; prerequisites; installments as separate mortgages; redemption.* Sec. 2. To entitle any party to give a notice as hereinafter prescribed, and to make such foreclosure, it shall be requisite,

1. That some default in a condition of such mortgage shall have occurred, by which the power to sell became operative;

2. That no suit or proceeding shall have been instituted, at law, to recover the debt then remaining secured by such mortgage, or any part thereof; or if any suit or proceeding has been instituted, that the same has been discontinued, or that an execution upon the judgment rendered therein has been returned unsatisfied, in whole or in part; and

3. That the mortgage containing such power of sale has been duly recorded; and if it shall have been assigned that all the assignments thereof shall have been recorded. * * *

14427. *Notice of foreclosure; publication.* Sec. 3. Notice that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, shall be given by publishing the same for twelve (12) successive weeks at least once in each week in a newspaper published in the county where the premises included in the mortgage and intended to be sold, or some part of them, are situated * * *.

* * * * *

14429. *Sale; time, place.* Sec. 5. The sale shall be at public vendue between the hour of nine (9) o'clock in the forenoon and the setting of the sun, at the place of holding the circuit court within the county in which the premises to be sold, or some part of them, are situated, and shall be made by the person appointed for that purpose in the mortgage, or by the sheriff, under sheriff, or a deputy sheriff of the county, to the highest bidder.

* * * * *

14433. *Deed of sale; endorsement, deposit with register, recording; entry upon redemption.* Sec. 9. The officer or person making the sale shall forthwith execute, acknowledge, and deliver, to each purchaser a deed of the premises bid off by him; * * * And he shall endorse upon each deed the time when the same will become operative in case the premises are not redeemed according to law. * * *

* * * * *

14438. *Surplus proceeds of sale, distribution.* Sec. 14. If after any sale of real estate, made as herein prescribed, there shall remain in the hands of the officer or other person making the sale, any surplus money after satisfying the mortgage on which such real estate was sold, and payment of the costs and expenses of such foreclosure and sale, the surplus shall be paid over by such officer or other person on demand, to the mortgagor, his legal representatives or assigns * * *.

public auction to the owners of the mortgage for $6,610.18. The selling price of the property was exactly equal to the balance due on the loan plus interest, costs, and charges and was applied in full satisfaction of the indebtedness of McNaughton and the Palmer Co. The amount of McNaughton's loss was $9,355.95, but if the loss falls within the provision of section 117 (a), as the respondent contends, the deduction to which the petitioner is entitled in respect of that loss is limited to 30 percent of the total loss sustained.

Any provision of the statute which limits the deduction in respect of a loss to an amount substantially less than the amount of loss actually sustained is admittedly a harsh rule and it is human nature to construe the statute, if at all possible, so as to permit the deduction of the full amount of the loss. Assuming, however, that this is the type of case in which doubts are to be resolved in favor of the taxpayer and against the Government, an assumption extremely doubtful in itself since the question to be determined is the amount of a deduction, *New Colonial Ice Co. v. Helvering*, 292 U. S. 435, that rule of construction has no applicability here because the wording of the statute is plain and no ambiguity is involved. According to the statute the deduction in respect of a loss sustained "upon the sale of * * * a capital asset" is to be limited in the manner prescribed. In the instant case we have an admitted sale of a capital asset belonging to the decedent and it is obvious that the said sale completed or closed the transacted entered into by the decedent for profit, so that it may properly be said that the loss was sustained "upon the sale" of the decedent's property. It is true that in *Sol Greisler*, 102 Fed. (2d) 787, affirming 37 B. T. A. 542, the opinion of the court does contain some discussion as to the intent of Congress and the view is expressed that the term "sale" as used in section 117 (a) does not include "judicial sales made by the sheriff in execution of a judgment in a proceeding for the foreclosure of a mortgage given by a prior owner." Obviously we do not have such a situation here. In this case, as previously pointed out, the property was bought and paid for in full by McNaughton and Palmer, who then, as owners of the property, gave a mortgage to secure a cash loan made to them by the Detroit Trust Co. The liability so secured was their liability, not that of a prior owner. The subsequent sale was made under and by virtue of the power granted by them in the mortgage instrument. Further in its opinion the court, in the *Greisler* case, takes particular pains to point out that the title conveyed on the sale in that case was the title of the mortgagor and not the title of the taxpayers, who had merely bought the property subject to the mortgage. Here McNaughton, the petitioner's decedent, and Palmer were the mortgagors and it was their

title and property which was sold. I am unwilling to assume that the court, in a case so obviously distinguishable and with respect to which the court itself has drawn a distinction, would apply its holding in *Sol Greisler*, *supra*. If Congress had intended to exclude sales of the character here dealt with, it would surely have inserted some qualifying or modifying words, but, as the court itself points out, "no modifying words are used." Cf. *White* v. *United States*, 305 U. S. 281, and *Helvering* v. *Weaver Co.*, 305 U. S. 293. In those cases the language of the congressional committee reports just as strongly indicate that Congress, when it enacted the provisions of the statute there in question, did not have specifically in mind the particular type of transaction there involved, but, even so, the Supreme Court held that the plain language of the statute was controlling. I can see no reason why the rule there expressed is not equally applicable here.

In some quarters the conclusion here sought by the petitioner seems to be justified by the mistaken impression that the mortgagee is an owner of the parcel of real estate and when the value of the real estate drops below the amount due under the mortgage the mortgagor's interest in and ownership of the property is simply extinguished and the mortgagee then has the right to possession and thereby becomes the legal owner of the mortgagor's interest in the property, the sale under foreclosure being a mere matter of form. Such might be the result where the land is sold under a land purchase contract and the statutory requirements with respect to forfeiture are complied with by the vendor, *C. G. Ganopuls*, 39 B. T. A. 1120, but the situation and rights of the parties in the instant case are quite different. See excerpts from the Michigan statutes previously quoted in the margin. The purposes sought to be accomplished may be the same, but the processes for enforcing the mortgage lien are inherently different. The mortgagee under his mortgage has no right to take over the real estate itself, as in *C. G. Ganopuls*, *supra*, and he may become the owner of the property only by one of two methods— by direct negotiation with the mortgagor, as in *Betty Rogers*, 37 B. T. A. 897; affd., 103 Fed. (2d) 790, or by purchase at the foreclosure sale. He can not take the property to satisfy his debt, but has only the right under the provisions of the mortgage contract and the applicable statutes to cause the sale of the property at public auction and to require the application of so much of the proceeds from the sale as may be required in satisfaction of his debt. It is true a mortgagee may and very often does buy the property, but such ownership does not result from any rights acquired by him under the mortgage but solely from the fact that he has bid the highest price for the property at the sale. If then the mortgagee can acquire

and does acquire the property of the mortgagor only by purchase, how can it be said that the mortgagor has parted with the said property by any method other than sale? It is not enough to say with respect to the mortgagor, as we did in *Lloyd Jones*, 39 B. T. A. 531, that "the debt was merely paid or his obligation extinguished", and certainly in this case it would be inaccurate to say, as we did there, "that petitioner received no price or consideration" for his property. Here it is stipulated that the property of the decedent was sold and that the selling price was $6,610.18, and the Michigan statutes quoted in the margin directed that the sheriff apply the proceeds of the sale to the satisfaction of the personal and direct obligations of McNaughton and the Palmer Co., and the stipulation and documentary evidence further show that the sheriff performed his duty. Accordingly the decedent in the instant case did receive a price or consideration for his property and the consideration so received was used to satisfy his debt to the mortgagee.

The general tenor of much of the argument being currently advanced in support of the claim that sales made pursuant to mortgage foreclosure proceedings should not be considered as "sales" in determining the income tax consequences of such transactions is that a "common sense view" of the situation should be taken or consideration should be given to the "reality" of the transactions and that "highly technical processes of reasoning" should not be indulged nor the "decisions based on tenuous legalistic grounds." The Supreme Court, in *Helvering* v. *Midland Mutual Life Insurance Co.*, 300 U. S. 216, has already passed on the reality of such transactions and has indicated that the income tax consequences are no different with respect to sales and purchases of property under foreclosure and the satisfaction of liabilities with the proceeds of such sales than with respect to sales of property and the payment of outstanding liabilities with the proceeds in the ordinary course of business. Congress has enacted a plain statute and the Supreme Court has held that the transaction involved in a mortgage foreclosure proceeding should be regarded as real. Regardless therefore of inclination or desire, the granting of relief to taxpayers in such cases as the one now before us is the function of Congress and not that of the Board.

As to the effect of the quitclaim deed, it is my opinion that little need be said. The sale of the property and the delivery of the deed both occurred in the taxable year. It has been held that a loss sustained by the mortgagor under such circumstances is not deductible until the period of redemption has expired. *J. C. Hawkins*, 34 B. T. A. 918; affd., 91 Fed. (2d) 354, and *Derby Realty Corporation*, 35 B. T. A. 335. In this instance the giving of the deed merely terminated the period of redemption. Upon the sale of property

under foreclosure, the Michigan statutes, section 14433 previously quoted in the margin, require the sheriff to give a deed to the purchaser, the deed to become effective upon termination or falling in of the redemption period, but when the redemption period comes to an end the title so acquired relates back to the date of the purchase. *Stout* v. *Keyes*, 2 Doug. (Mich.) 184. Cf. *Johnson* v. *Ballou*, 28 Mich. 379; *Busch* v. *Donahue*, 31 Mich. 481; and *Flint & Pere Marquette Railway Co.* v. *Gordon*, 41 Mich. 420, 430; 2 N. W. 648. Regardless, therefore, of the point of time at which the sustained loss became deductible, the event which passed the title and gave rise to the loss was the sale of the property.

For the reasons stated above I am of the opinion that the previous decisions of the Board in *C. Griffith Warfield, supra; H. L. Rust, Jr., supra*, and *Lloyd Jones, supra*, are in error and should be reversed and respectfully note my dissent to the conclusions reached by the majority in the instant case.

LEECH and HARRON agree with the above dissent.

---

DISNEY, dissenting: I dissent. The mortgage foreclosure sale alone gave no right to deduction for loss in the taxable year because in Michigan the mortgagor has a 12-month period of redemption. *Derby Realty Corporation*, 35 B. T. A. 335. Any loss allowed in the taxable year must, therefore, be predicated upon the quitclaim deed from the mortgagor to the mortgagee-purchaser at foreclosure sale. The majority opinion states that there was no consideration for the quitclaim deed. If so, the mortgagor could set it aside at any time within the period of redemption, and would have suffered no loss within the taxable year. Such a release or acquittance as contained in the quitclaim deed here involved must be based upon consideration, 53 C. J. 1,200, and it seems obvious that, in the absence of such consideration, the mortgagor at any time within the 12-month period could have tendered the necessary amount of money to the mortgagee-purchaser and redeemed the land. Until his right so to do had terminated, it seems clear that he had suffered, and should be allowed, no loss, the identifiable event establishing same, to wit, termination of redemption period, not having yet occurred. The respondent in the deficiency notice seems to rely only upon the quitclaim deed as constituting the sale or exchange, within the purview of section 117. The petition likewise concerns itself only with the quitclaim deed and not with the mortgage foreclosure sale itself as constituting "sale or exchange" within the intendment of the statute; and the respondent upon brief contends that any deductible loss must be based upon the quitclaim deed, and not upon the fore-

closure proceedings, and that the loss is not allowable in 1934, prior to termination of the period of redemption.

It is apparent, therefore, that the question as to which is the year when loss occurred was a very real one in this proceeding. Without going into the question as to whether the quitclaim deed was by way of sale or exchange, I merely point out the anomalous situation of allowing loss in 1934, when the foreclosure itself did not become operative in that year, yet branding the quitclaim deed as without consideration. Under the Michigan statute, the mortgagor retains legal title and right to possession, throughout the year of redemption, the sheriff's deed upon foreclosure is recorded only "for the better preservation thereof," becomes "operative" only at termination of the 12-month period, in case of redemption becomes "void and of no effect", and is destroyed by the register of deeds. I can not conceive of the holder of such right, which is subject only to an inchoate right on the part of the mortgagee, not yet operative, divesting himself thereof by a quitclaim deed, wholly without consideration so as to preclude himself from asserting right to redeem, and accelerate the incidence of his loss. Until he had lost the right to redeem, his claim to tax loss is as inoperative as the statute brands the foreclosure deed; and if there was consideration for the quitclaim deed there was sale or exchange, as respondent contends. I think the majority opinion poses a quandary, without answering the question propounded.