GERASIMOS *v.* CONTINENTAL BANK.

1. MORTGAGES—FORECLOSURE—PROMISE TO REDEEM NOT SHOWN BY PROOFS.

In a suit to redeem from a mortgage foreclosure, plaintiff's claim that defendant, mortgagee under the second mortgage and purchaser of the premises subject to redemption after foreclosure of the first mortgage, had promised plaintiff that it would furnish the money to redeem from said foreclosure, *held*, not sustained by the proofs.

2. SAME — PURCHASER AT MORTGAGE FORECLOSURE SALE ACQUIRES AN EQUITABLE INTEREST IN LAND.

A purchaser of land at a sale on mortgage foreclosure acquires an equitable interest in the premises, which he may convey by quitclaim deed prior to the expiration of the redemption period, and which, when so conveyed, will ripen into a legal title in his grantee, if the land is not redeemed.

3. SUBROGATION—DIRECT PURCHASE OF INTEREST IN LAND DOES NOT INVOLVE SUBROGATION.

Direct purchase of an interest in real estate does not involve legal subrogation.

4. MORTGAGES—MORTGAGEE IN SECOND MORTGAGE WHO PURCHASED PREMISES FROM PURCHASER AT FORECLOSURE SALE OF FIRST MORTGAGE HOLDS LEGAL TITLE.

Where the purchaser of land at a sale on mortgage foreclosure, before expiration of the period of redemption, quitclaimed its interest in the land to the mortgagee in a second mortgage, the latter, on expiration of the period of redemption without that right being exercised by the mortgagor, became the holder of the legal title, and was not merely subrogated to the rights of the mortgagee under the first mortgage.

Appeal from Wayne; Law (Eugene F.), J., presid-

[1]Mortgages, 27 Cyc. p. 1858 (Anno); [2]Id., 41 C. J. § 1113 (Anno); 27 Cyc. p. 1822; [3]Subrogation, 37 Cyc. p. 367 (Anno); [4]Mortgages, 27 Cyc. p. 1822.

237—Mich.—33.

ing.    Submitted January 19, 1927.    (Docket No.
125.)    Decided February 4, 1927.

Bill by Theodore Gerasimos and another against the
Continental Bank to redeem from a mortgage fore-
closure.    Defendant filed a cross-bill to quiet title.
From a decree for defendant, plaintiffs appeal.    Af-
firmed.

  *John W. L. Hicks,* for plaintiffs.

  *Anthony Maiullo* (*Harry J. Connine,* of counsel), for
defendant.

  STEERE, J.    This bill is filed to enforce a claim of
right to redeem certain premises described as 541
Monroe avenue in the city of Detroit.    In December,
1921, plaintiffs were owners of said premises subject
to a mortgage for $20,000 given to the Prudential Life
Insurance Company of New Jersey, bearing interest
at the rate of 6½% per annum payable semiannually.
On April 22, 1922, they had also given a second mort-
gage on said property to defendant Continental Bank
for the sum of $5,000.    Plaintiffs defaulted in the
terms of the $20,000 mortgage to the Prudential com-
pany and it was foreclosed by advertisement, and at
the time and place advertised sold by the sheriff to
the highest bidder.    The mortgagee, as highest bidder,
bought the property for the principal sum of the
mortgage, interest and costs of sale, amounting to
$22,123.74.    Sheriff's deed was given on April 3, 1923,
and recorded in the office of the register of deeds three
days later.    On April 2, 1924, the day before expira-
tion of the year of redemption, the defendant Con-
tinental Bank purchased from the Prudential company
its equitable interest in the property for the full sum
necessary to redeem from its foreclosure purchase and
$84.77 in excess thereof, the purchase price amounting
to $23,646.55, and on that date the Prudential company

executed a quitclaim deed of the premises to the Continental Bank, which was received for record in the office of the register of deeds for Wayne county on April 5, 1924.    This deed contained the following language:

"The intent of this conveyance is to convey all interest in the above described premises acquired under the sheriff's deed, dated April 3, 1923, executed by Theodore Gerasimos and Evelyn Gerasimos, his wife, Nicholas Haniotis and Mary, his wife, all of the city of Detroit, county of Wayne, Michigan, which deed is recorded in liber 1699 of deeds, on page 302, Wayne county records, having been recorded April 6, 1923."

The Continental Bank thereafter insisted it was entitled to possession of the premises under said purchase and deed.    When possession was refused by plaintiffs it instituted summary proceedings to recover the same.    Plaintiffs contended that under the statute the second mortgage taken by the Continental Bank was merely enlarged by its redemption of the first mortgage and on June 17, 1924, filed this bill asking a preliminary injunction, authority to redeem, etc. Defendant answered in denial, with a cross-bill for affirmance of its title and right to possession, claiming that by its purchase from the Prudential company of all its interest and rights in the property, as shown by its deed, defendant became absolute owner of the premises with clear title thereto after the year's period for plaintiffs to redeem had expired.

It is alleged in plaintiffs' bill and denied in the answer that the president of defendant promised plaintiff Theodore Gerasimos that the bank would advance him the amount of money necessary to redeem from foreclosure of the first mortgage, and because of reliance upon such promise plaintiffs made no further effort to obtain the money necessary to redeem within the required time.    That issue of fact was fully gone into on the hearing with the testimony in direct con-

flict. W. G. Toepel, president of the Continental Bank, absolutely denied ever having promised or intimated to Gerasimos that he or the bank would loan him the amount necessary to redeem from the first mortgage, or would redeem for plaintiffs' benefit, while Gerasimos asserted that he had. The trial court found on that issue of fact that plaintiffs had totally failed to sustain the burden of proof, held and decreed that defendant's purchase of the first mortgage rights and deed of the Prudential company given therefor were free from any trust obligations or promises to plaintiffs, and as a matter of law vested in the defendant bank clear title to the property with right of possession.

Defendant's second mortgage for $5,000 was to be paid in installments of $500 every three months. As to it the mortgagors defaulted from the beginning. When pressed for payment of the first installment which fell due, Gerasimos finally gave defendant his check for $250 on another bank which was not honored because of "insufficient funds" and never redeemed by Gerasimos. The notes secured by this second mortgage were signed by Gerasimos and compatriot named Haniotis who was recognized by Gerasimos as a partner in the transaction, but who was neither a party to this suit nor called as a witness, and with whom Gerasimos was in active litigation over this property during foreclosure of the Prudential company's mortgage. Gerasimos testified of him and his interest in the subject-matter of this litigation, as follows:

"I own this property jointly with Mr. Nicholas Haniotis. I couldn't say right off, when we bought this property, but we bought it on contract the previous year, before we gave the mortgage to the Prudential Insurance Company. I had a leasehold interest in it ten years before. I had a ten-year lease from William Damstatder. We got the loan from the Prudential Insurance Company, I think it was in 1921. We bought the property on contract in 1920, as near as I could recollect. I borrowed the money myself

directly from the Prudential Insurance Company, and he was a partner of mine—not in partnership, that is, continued his business, but I call it partner—with the agreement that he was supposed to pay me so much per month for using the fixtures and everything in that building.   *   *   *    He had a 'half' interest in that building after he signed the mortgage.    He has a half interest in the building now.   *   *   *    I was engaged in litigation with Haniotis.    I started suit against Mr. Haniotis in June, 1923.    I was represented by Mr. Percy Grose and I think I signed a bill of complaint in his office against Nick Haniotis."

In testifying to Gerasimos's failure to care for his indebtedness to the bank, Toepel said:

"All I ever got from Mr. Gerasimos was promises on the street though I wrote him many letters.   *   *   *
"Q.   *   *   *    Had anything ever been paid on this loan?
"A. Not a penny.    Mr. Gerasimos promised me a hundred times he would make this payment but he never even came into the bank to do so."

Though told by him in various ways, Gerasimos's most concise statement of Toepel's promise to protect against the foreclosure is,

"He told me if he don't get the money outside, he will finance that mortgage, pay that mortgage up."

This Toepel positively denied.    It could serve no beneficial purpose to review their testimony at length on this issue of fact.    Gerasimos testified he had lived in Detroit 28 years and "been in business off and on for all that time."    What the nature of his business was he does not disclose.   Toepel testified he had lived in Detroit 52 years and been in the banking business 37 years, for 11 of which he was vice-president of the Peninsular State Bank.    A careful reading of this record and comparison of the testimony of those two witnesses is convincing that the following conclusions of the trial judge on that issue of fact should not be disturbed:

· · "I am compelled from all the evidence and all the surrounding circumstances to find that Mr. Toepel, either personally or as a representative of the defendant bank, never made Mr. Gerasimos any promise that he would furnish money to redeem from the Prudential Life Insurance mortgage foreclosure.    The charges of fraud in the bill of complaint are wholly without foundation.    No other determination would be rational under the facts and circumstances shown by the evidence in this case."

Upon the question of law involved, the court then said:

"Such being the necessary determination of this question of fact, the law of this State gives to the defendant bank a perfect legal title to the real estate in question as against plaintiffs.    *McCreery* v. *Roff,* 189 Mich. 558; *Sanderson* v. *Ressler,* 223 Mich. 232."

Against that conclusion plaintiff cites section 14959, 3 Comp. Laws 1915, and contends that while a second mortgagee may redeem and be thereby subrogated to the rights of the first as a mortgagee, he cannot by contract purchase and have the rights resulting from its foreclosure; citing *Johnson* v. *Johnson,* Walk. Ch. 331.

Whether *Johnson* v. *Johnson* has been erroneously overruled, as claimed for appellants, or construed and distinguished, as contended for appellee, we find no occasion to again traverse that ground of controversy under more recent interpretations of our foreclosure law.    Direct purchase of an interest in real estate does not involve legal subrogation, and it would be straining a point to call it conventional subrogation. After foreclosure was had and the property deeded by the sheriff to the highest bidder, plaintiffs' equity of redemption was lost, and only a right of redemption during the statutory period remained.

"The equity of redemption is that interest in the land which is held by the mortgagor before foreclosure; while the right of redemption is not an interest in the

land at all, but a mere personal privilege given by statute to the mortgagor after the land has been sold under the mortgage." 2 Jones on Mortgages (7th Ed.), § 1038*a.*

In *Gage* v. *Sanborn,* 106 Mich. 269, it was held (quoting from the syllabus) :

"A purchaser of land at a sale on mortgage foreclosure acquires an equitable interest in the premises, which he may convey by quitclaim deed prior to the expiration of the redemption period, and which, when so conveyed, will ripen into a legal title in his grantee, if the land is not redeemed."

To that point the *Gage Case* is cited in *McCreery* v. *Roff, supra,* where the subject is fully discussed and it is said amongst other things:

"There is a marked difference between redeeming, which is a matter of right, and taking an assignment of the equitable interest acquired by the purchaser on foreclosure, which is a matter of contract between the parties. *Lieblein* v. *Hansen,* 178 Mich. 11; *Frisbee* v. *Frisbee,* 86 Me. 444 (29 Atl. 1115). * * * And a junior mortgagee may bid in the land, with all of the rights of any purchaser upon the foreclosure of a prior mortgage by advertisement. Jones on Mortgages (6th Ed.), § 1884; Pingrey on Mortgages, § 1390."

In the recent case of *Dunitz* v. *Woodford Apartments Co.,* 236 Mich. 45, that doctrine is again affirmed as follows:

"A foreclosure of a mortgage extinguishes it. When the amount due under the mortgage is paid to the mortgagee by the purchaser at the sheriff's sale, the lien is destroyed, and the purchaser becomes the owner of an equitable interest in the mortgaged premises which ripens into a legal title if not defeated by redemption as provided by law. It is not a 'lien, incumbrance or mortgage' which the purchaser at a foreclosure sale acquires, but it is an interest or title, equitable in character, and with nothing to be done on his part to make it absolute if it is not redeemed within the **period**

of time prescribed by law.    This equitable interest, so acquired by a purchaser at a foreclosure sale by advertisement, may, during the period of redemption, be sold or assigned if the purchaser wishes.    But he cannot be compelled to sell or assign it, and neither his present equitable title, nor his prospective legal title, can be defeated excepting by redemption within the prescribed time and in the manner provided by statute."

In the instant case the equitable interest acquired by the Prudential company as purchaser at the foreclosure sale by advertisement was, during the period of redemption, voluntarily sold to defendant and conveyed by quitclaim deed and the equitable title so acquired ripened to a legal title in defendant at expiration of redemption period provided by law.

The decree will stand affirmed, with costs to defendant.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.