DERBY REALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No 81213.   Promulgated January 27, 1937.

*O. W. Swecker, Esq.*, for the respondent.

### OPINION.

ARNOLD: This case involves a deficiency of $846.07 in petitioner's income tax for the year 1932, which arises in part on respondent's disallowance of $19,804.84 as a net loss in that year carried forward from 1931 and resulting from the sale, in foreclosure of a mortgage, of certain land in 1930. The issue raised on a reserve for future improvements which was disallowed by respondent has apparently been abandoned by the petitioner, leaving as the sole issue the year in which the loss on the foreclosure sale was sustained. Respondent contends that it was the year of the sale, 1930; petitioner, the year when its right of redemption expired, 1931.

The facts, which were stipulated, are as follows:

The petitioner, Derby Realty Corporation, is a Michigan corporation.

The business of the petitioner is that of a subdividor of and dealer in real estate.

The petitioner in March of 1926 purchased farm property in Michigan at a cost of $50,570.25, paying part of the purchase price in cash and securing the balance to the vendor by the execution of mortgages. Petitioner later defaulted in its payments on the mortgages. At that time the principal of the mortgages had been reduced to $22,140. The property was advertised for sale and sold in foreclosure of the mortgages on October 11, 1930. The period during which the petitioner could redeem the property under Michigan law expired on October 11, 1931.

Petitioner reported on its income tax return for the year 1931 a loss resulting from the foreclosure in the amount of $28,430.25.

As a result of the foreclosure loss, the petitioner's income tax return for the year 1931 showed a net loss of $19,804.84, which was carried forward to its 1932 return as a deduction.

The property above referred to was purchased in 1926 and was never redeemed by the petitioner.

Petitioner here contends that under Michigan law the mortgagor retains legal title to mortgaged property after foreclosure sale and until the expiration of his right to redeem; and that the purchaser on foreclosure sale therefore acquires no interest in the realty, but only a right to be vested with legal title when the deed executed at the time of the foreclosure sale shall become finally effective at the end of the redemption period. Furthermore, it is urged that the mortgagor has a right of possession after foreclosure sale and until the end of the redemption period.

The relevant provisions of the statutory law of Michigan on foreclosure of mortgages and extinction of the right of redemption after foreclosure are as follows (Comp. Laws of Michigan, 1929, vol. 3):

§ 14433 *Deed of sale; endorsement, deposit with register, recording; entry upon redemption.* SEC. 9. The officer or person making the sale shall forthwith execute, acknowledge, and deliver, to each purchaser a deed of the premises bid off by him; * * * And he shall endorse upon each deed the time when the same will become operative in case the premises are not redeemed according to law. * * * In case such premises shall be redeemed, the register of deeds shall, at the time of destroying such deed, as provided in section twelve [12] of this chapter, write on the face of such record the word "Redeemed," stating at what date such entry is made, and signing such entry with his official signature.

§ 14434 *Same; effect upon failure to redeem premises.* SEC. 10. Unless the premises described in such deed shall be redeemed within the time limited for

such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named, his heirs or assigns, all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage, or at any time thereafter, * * * and the record thereof shall thereafter, for all purposes be deemed a valid record of said deed without being re-recorded, * * *

§ 14435 *Redemption; payment of sum bid and expenses, effect.* Sec. 11. If the mortgagor, his heirs, executors, administrators, or any person lawfully claiming from, or under him or them, shall, within one [1] year from the time of such sale, redeem the entire premises sold, by paying to the purchaser, his executors, administrators or assigns, or to the register of deeds in whose office such deed is deposited for the benefit of such purchaser, the sum which was bid therefor, with interest from the time of the sale at the rate per cent, borne by the mortgage, not exceeding ten [10] per cent, per annum, and in case such payment is made to the register of deeds, the sum of one [1] dollar as a fee for the care and custody of such redemption money, then such deed shall be void and of no effect; * * *

§ 14436 *Same; destruction of deed; record.* Sec. 12. Upon the payment of the entire sum bid at such sale, and interest thereon, and the fee of one [1] dollar mentioned in the preceding section, as aforesaid, to the register in whose office the deed therefore shall have been deposited, or upon delivering to such register a certificate, signed and acknowledged by the person entitled to receive the same, and certified by some officer authorized to take the acknowledgement of deeds, setting forth that such sum, with interest, has been paid to such person, and upon paying to such register a fee of twenty-five [25] cents, such register shall thereupon destroy such deed, and shall enter in the margin of the record of such mortgage a memorandum that such mortgage is satisfied; * * *

§ 14656 *Equity of redemption; liability to sale on execution; redemption.* Sec. 121. All rights of redeeming mortgaged real estate and real estate sold on execution, may be sold on execution in the manner herein prescribed for the sale of other real estate on execution, excepting in the case hereinafter specified; and such equity of redemption may be redeemed, and the rights of any purchaser may be acquired, in the same manner, and upon the same terms and conditions as other real estate sold on execution.

§ 14659 *Equity of redemption not to be sold under execution on certain judgment.* Sec. 124. When a judgment shall be recovered for a debt secured by mortgage of real estate, or for any part of such debt, it shall not be lawful for the sheriff or other officer to sell the equity of redemption of the mortgagor, his heirs or assigns in such estate, by virtue of any execution upon such judgment.

Section 14631 permits the redemption within one year of the sale of any land sold on execution of judgment on payment of the bid price and interest.

Little is needed by way of judicial gloss upon these provisions. It seems clear that under section 14956 the mortgagor is entitled to possession of the mortgaged property until the foreclosure sale, *Nusbaum* v. *Shapero*, 249 Mich. 252; 228 N. W. 785; and even until foreclosure has been perfected by expiration of the period of redemption, *Lowrie & Robinson Lumber Co.* v. *Rubin*, 245 Mich. 224; 222 N. W.

169; *Janower* v. *Sibley Lumber Co.*, 222 N. W. (Mich.) 736. In the *Lowrie* case it was said, at page 170:

\* \* \* The rights of plaintiff [which took title as a lienor for materials furnished] are no greater than those of a mortgagee, and, upon foreclosure, the court may not, pending sale and the statutory period of redemption, dispossess a mortgagor and place the mortgagee in full possession.

As to the nature of the interest which the mortgagor holds after the foreclosure sale and before the period of redemption has passed, the Michigan courts have held that it is a right of redemption which takes the place of his former equity of redemption held before the foreclosure sale. The court said in *Roff* v. *Miller* (sometimes cited as *McCreery* v. *Roff*), 189 Mich. 558; 155 N. W. 517, pp. 518, 519:

\* \* \* It is now settled that the purchaser, at a foreclosure by advertisement, ordinarily acquires an equitable interest in the land which he may, during the period given for redemption, transfer in full to another. And that his assignee, if there is no redemption, will take the legal title when it matures exactly as the original bidder himself would have taken it. *Gage* v. *Sanborn*, 106 Mich. 269, 64 N. W. 32.

\* \* \* Such legal title does not vest at once upon the auction sale on statutory foreclosure (Jones on Mortgages, § 1884), but only at the expiration of the period allowed for redemption. Until the end of that period the foreclosure proceedings may be abandoned, if the parties choose to do so (*Dodge* v. *Brewer*, 31 Mich. 227), or a subsequent mortgagee may still demand an assignment of the mortgage.

In the *Gage* case, cited in the above quotation, it was said:

A purchaser of land at a sale on mortgage foreclosure acquires an equitable interest in the premises, which he may convey by quitclaim deed prior to the expiration of the redemption period, and which, when so conveyed, will ripen into a legal title in his grantee, if the land is not redeemed.

And in the recent case of *Gerasimos* v. *Continental Bank*, 237 Mich. 513; 212 N. W. 71, the Supreme Court of Michigan said (p. 73):

z\* \* \* After foreclosure was had and the property deeded by the sheriff to the highest bidder, plaintiffs' equity of redemption was lost, and only a right of redemption during the statutory period remained.

\* \* \* and the equitable title so acquired [by the purchaser at the foreclosure sale] ripened to a legal title in defendant at expiration of redemption period provided by law.

We do not think it necessary to decide whether under local law legal title remains in the mortgagor until the expiration of the redemption period as petitioner contends, or passes on the foreclosure sale to the purchaser, leaving a mere equitable right in the mortgagor. In any event the purchaser's legal title during such period would be at best inchoate, and what the courts have termed the mortgagor's "right of redemption" carries with it substantial rights, possessory

and otherwise. In Federal tax cases we are not concerned with the niceties of legal title, *Tyler* v. *United States*, 281 U. S. 497; or bound by the appellations applied to rights under local law, *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110. We are concerned only with the substance of the rights themselves. And we must determine here whether petitioner lost all substantial property or rights in the land when it was sold under the mortgage or only, as petitioner claims, when the right to redeem the land by payment of the mortgage with costs and interest expired.

It seems obvious to us that petitioner was not divested of material rights until the year 1931, when its right of redemption expired. The deed acquired by the purchaser at the foreclosure sale did not become operative until the end of the redemption period, §§ 14433, 14434; and if the redemption money had been paid by the mortgagor the deed would, thereupon, have become void, § 14435; and, under § 14436, would have been destroyed. The equity of redemption might be sold, § 14656; and presumably the right of redemption after foreclosure sale also, since anyone lawfully claiming under the mortgagor was given the power to redeem under § 14435. As important for our purposes as the fact that the legal title transferred to the purchaser at the foreclosure sale was defeasible on the redemption payment being made, is the fact that throughout the redemption period the mortgagor was entitled to the possession and usufruct of the land. *Lowrie & Robinson Lumber Co.* v. *Rubin, supra.* Whatever the measure of the mortgagor's loss as fixed by the foreclosure sale, therefore, it might be mitigated in the succeeding year by the mortgagor's sale of the right to redeem, sale of the right of possession for a year, or by the rents and profits which might accrue from such possession. With such substantial rights retained by the mortgagor after the foreclosure sale, we think that event completely undeterminative of the loss.

Respondent falls back upon the contention that the foreclosure sale is an "identifiable event", cf. *United States* v. *White Dental Mfg. Co.*, 274 U. S. 398; which signalized sustainment of the loss, and that, applying a "practical test" in the instant case, the foreclosure sale rather than the expiration of the right of redemption must mark petitioner's loss, for, since petitioner did not redeem the land, it must be presumed never to have intended to. We may not presume such a lack of intention, and, while there are circumstances in which an identifiable event which falls short of ultimately determining the loss will still be taken to fix it for tax purposes, the foreclosure sale here is not such a one. It only set in motion that which would result in a determination of the loss at the end of the redemption period. That event did not, as did the sequestration of the White Dental Co.'s

property by the German Government in time of war, create a situation with an unforeseeable end, but merely made the loss finally determinable at a fixed time, one year thereafter. It did not require an "incorrigible optimist", as was predicated of the White Dental Co. situation, to hope that redemption might be made in that time.

The question here presented is not new. In *Frederick Krauss*, 30 B. T. A. 62, we held that the sale of land in Florida for taxes did not result in a loss to its owner so long as the right of redemption existed. With this conclusion that a *tax sale* does not determine a loss if there is a period of redemption thereafter, respondent apparently agrees. See I. T. 2711, C. B. XII-2, p. 51; G. C. M. 15669, C. B. XIV-2, p. 154. But respondent has followed a contrary rule on mortgage foreclosures arising under state statutes somewhat similar to the Michigan statute here, and upon these rulings he now relies. See G. C. M. 12737, C. B. XII-1, p. 120 (Calif.); G. C. M. 12860, C. B. XIII-1, p. 123 (Ill.); and G. C. M. 13360, C. B. XIII-2, p. 194 (Kans.). In *J. C. Hawkins*, 34 B. T. A. 918, we held that under California law the mortgagor's loss was sustained when the period of redemption expired and not when the foreclosure sale was made.

The difference in the rule followed by the Commissioner in his rulings on sales under foreclosure and on sales for taxes, where a period of redemption is alike allowed, is not fully brought out in respondent's brief, but would appear to rest upon a supposed principle of probability of redemption; for it is argued in the Commissioner's memoranda, *supra*, that a foreclosed mortgagor seldom in fact redeems, whereas the owner of land sold for taxes generally does. It is also pointed out in the same memoranda, by way of explanation, that the amount necessary to be paid by the taxpayer-debtor is generally small in proportion to the land's value where it is owed for taxes, but often proportionately large when it is a debt secured by mortgage. This contention is apparently what is referred to by respondent in his brief as a "practical test."

The principle laid down by the Supreme Court in *Lucas* v. *American Code Co.*, 280 U. S. 445, and relied on by respondent, that "the general requirement that losses be deducted in the year in which they are sustained calls for a practical, not a legal, test", must be read in its context and with the facts of that case fully in view, for the Court's immediately preceding sentence reads: "As respects losses occasioned by the taxpayer's breach of contract, no definite legal test is provided by the statute for the determination of the year in which the loss is to be deducted." There the taxpayer, using the accrual method, after its breach of a contract of employment, upon which suit was brought, sought to deduct the expected damages in the year of the breach, although the damages were at that time unpredictable

and the taxpayer was then denying and contesting its liability in the courts. In the instant case, on the other hand, we have two events, the foreclosure sale and the expiration of the redemption period. The first is but a preliminary step in taking the mortgagor-taxpayer's property in satisfaction of a debt and may result in a loss; the second is final and absolute in cutting off the mortgagor's rights in such property and establishes the loss beyond question. The Commissioner has adopted one rule for tax sales and another for foreclosure sales, basing the distinction so made on a so-called practical test of probability of redemption. Where the legal test of the termination of petitioner's rights is so clear as it is here, and where the practical test of benefits is also so obvious, we think that the application of either test must reach the same result. But the rule suggested by the respondent would lead us into endless speculation on petitioner's financial situation and financial hopes before we could choose which of the two events, foreclosure sale or expiration of the right of redemption and loss of possession, would be the "identifiable event" upon which loss and deduction must hinge.

We think that clearly in such circumstances the last event is the proper test of when the loss was sustained. Cf. *J. C. Hawkins, supra.* That event here took place in 1931 and we think the loss was then suffered and should be treated as deductible in that year.

As petitioner put in no evidence upon the question whether respondent erred in disallowing an estimated reserve for future improvements in the amount of $10,749.98, we must assume that this claim has been waived.

*Judgment will be entered under Rule 50.*