WILLIAM C. HEINEMANN & CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91190. Promulgated December 8, 1939.

*Herman M. Berman, C. P. A.,* for the petitioner.
*Leslie H. Rushbrook, Esq., Sidney W. Hiken, Esq., F. R. Shearer, Esq.,* and *Alvin B. Peterson, Esq.,* for the respondent.

OPINION.

OPPER: The issue in this proceeding is the year in which the bad debt loss of a holder of real estate mortgage bonds may properly be allowed where the property is foreclosed in one year and the period of redemption expires in the next. The point arises out of the disallowance of a deduction taken in the year 1935 and resulting in proposed deficiencies of $1,168.16 and $102.92, respectively, in income and excess profits taxes for that year. Strangely enough, the question appears to be one of first impression, at least so far as this Board is concerned.

The character and extent of petitioner's loss is not in issue. Respondent does not dispute that the claim is a bad debt under the instant circumstances, nor that petitioner's share of the loss was properly calculated by apportioning the difference between the purchase price of the mortgaged property and the amount due. The principal facts appear by stipulation of the parties and are hereby found accordingly. The parties agree that petitioner held $54,000 worth of real estate mortgage bonds and that the mortgaged property was sold at foreclosure sale in May 1934 for an amount which was 53.62 percent of the total obligation, resulting in a loss to petitioner of $24,662.97. They also agree that this amount was entered on petitioner's books in 1935 as a charge against a reserve for losses;[1] that, at the time of the sale, the mortgagor had no other assets from which any part of the deficiency could be collected; and that the period of redemption of the foreclosed property, under the applicable Illinois law, expired in 1935, the privilege of redemption not having been exercised. It appears from the evidence that petitioner was the "house of issue" with respect to the mortgage bonds; that it made the loan to the debtor on which the bonds were issued; and that the bondholders' committee consisted entirely of officers of the petitioner; so that it was at all times pertinent to this proceeding acquainted with the facts and circumstances outlined and with the condition of the debtor and of the mortgaged property.

It has several times been determined that a mortgagor is entitled to take a loss for income tax purposes in the year when the period of redemption expires. *J. C. Hawkins*, 34 B. T. A. 918; affd., 91 Fed. (2d) 354; *Derby Realty Corporation*, 35 B. T. A. 335. These authorities, however, are not necessarily dispositive of the present question. We are dealing here with a mortgagee rather than a mortgagor; and it is urged that the existence of a loss as respects the owner of the property may be in doubt until foreclosure is

---

[1] No question of the propriety of the deduction is raised on this ground, it being stipulated that "Petitioner is on the actual charge-off method."

completed, while at the same time the transaction may be closed and completed and the loss definite and ascertainable as far as the creditor is concerned.

But before that question is disposed of a supplementary point should be decided. Petitioner was not technically the mortgagee. It was the owner of mortgage bonds issued under an indenture in connection with which a trustee held the mortgage and was authorized to act for the benefit of all bondholders. It appears from the stipulation of facts that foreclosure proceedings were instituted by the trustee at the request of the committee of bondholders; and that when the property was sold it was bid in by this committee on behalf of the bondholders, including this petitioner, payment being made not in cash but by delivery of all the outstanding bonds. Under these circumstances there was, in our opinion, no material difference between the situation of the present petitioner and the individual holder of a real estate mortgage. If we regard the trustee in the first instance and the bondholders' committee thereafter as having acted throughout as agent and trustee for all of the bondholders, including petitioner, we arrive at the same result as though petitioner was the sole mortgagee and foreclosed and bid in the property for itself. That there were other participants similarly situated changes the quantity, not the character, of petitioner's interest. No tenable distinction between the two situations has been suggested to us.

Under other circumstances it might be contended that the holder of a mortgage bond was not in as favorable a position to ascertain the facts as the outright owner of the entire mortgage. As we have pointed out, the record in this case is otherwise and no such contention is made. We need not consider here what the proper disposition of such a case would be and do not purport to pass upon it. Under the present facts the circumstance that this petitioner was not technically the mortgagee is immaterial in considering the year in which it is entitled to the bad debt deduction.

Assuming then that we may for all practical purposes treat the petitioner as the mortgagee, we come to a consideration of the principal question. This, in our view, requires that we determine the precise effect of the transactions giving rise to the present controversy. When the property was sold at foreclosure sale, the purchaser received and the mortgagor was deprived of no more than a contingent right, which, prior to the expiration of the period of redemption, could not be reduced to anything as definite or tangible as complete legal and equitable title. *Rawson* v. *Bethesda Baptist Church*, 221 Ill. 216; 77 N. E. 560. Since the position of mortgagor and purchaser is thus in a state of suspended animation pending redemption, and subject to unforeseeable contingencies, we have held

that it is only upon the conclusion of the completed transaction, when the period of redemption has expired, that the mortgagor's loss is sufficiently definite to permit its allowance. *J. C. Hawkins, supra; Derby Realty Corporation, supra.*

The question here, however, is not what the mortgagor loses but what the creditor obtains. If the sale is for cash to a third person the proceeds normally are the property of the mortgage creditor. See *Hallbert* v. *Turner*, 233 Ill. 531; 84 N. E. 704. The mortgage, as such, is extinguished, *Strause* v. *Dutch*, 250 Ill. 326; 95 N. E. 286; *Rawson* v. *Bethesda Baptist Church, supra.* And the sole remaining recourse of the mortgagee is an action on the deficiency. *Strause* v. *Dutch, supra.* If, as we are justified in concluding here, the petitioner was fully aware of the facts relating to the foreclosure, and the remainder of the debt was uncollectible and was known to be such in 1934, it would follow that the worthlessness was then so definite in character and ascertainable in amount that we can not sustain petitioner's contention that it was ascertained to be worthless in 1935. This result was suggested in *J. C. Hawkins, supra,* where the Board said (p. 923):

The extinction of the mortgage debt depends on the receipt of payment by the mortgagee, as such. See *Ewen MacLennan,* 20 B. T. A. 900; *John Hancock Mutual Life Insurance Co.,* 10 B. T. A. 736. * * *

The debt may have then been satisfied. But that fact is not decisive or even significant in determining what title or what property of the mortgagor was then disposed of, from the proceeds of which, theoretically in this case, the mortgagee was paid.

The situation is no different where the mortgagee is the purchaser and the purchase price is paid by a credit against all or part of the mortgage debt. No material change in the mortgagee's recovery can result from the mortgagor's election to redeem. If the election is exercised, the amount paid on redemption will not exceed the purchase price at the foreclosure sale with interest. Ill. Stat. C. 77, § 18, L. 1921, p. 500. If it is not, the creditor will be left with property the fair market value of which we may assume to be the bid price. *Helvering* v. *Midland Mutual Life Insurance Co.,* 300 U. S. 216. At least the parties do not contend otherwise here.[2] In either event, the extent of petitioner's collection and hence of the unrecoverable balance will be the same. We see no justification under the facts of this case for determining that the uncollectibility of the debt was ascertained by petitioner in a later year. On the contrary, we must conclude that under these circumstances the peti-

---

[2] The right of a creditor to redeem on the mortgagor's failure to do so, which in Illinois inures to an unsatisfied mortgagee, *Strause* v. *Dutch, supra,* need not concern us even if it appeared to have a theoretical value, since the mortgagee was the purchaser and could not redeem the property from itself.

tioner would have been justified in taking the bad debt deduction in the year when the foreclosure sale was held. This is in accordance with respondent's regulations (art. 23 (k) 3 and 4, Regulations 86), which, for the reasons stated, appear to be a correct construction of the law.

In addition to the stipulation, petitioner introduced testimony describing certain negotiations carried on between petitioner and the president of the mortgagor corporation. We are justified in finding as a fact, as we do, that certain conversations were had during the year 1935 in which the possible redemption of the property was discussed with the mortgagor's president and that the latter was heavily interested as its principal stockholder. He had, however, no legal or even moral obligation for the company's shortcomings to warrant the expectation that he would assume any deficiency. This evidence might be significant if the issue were the probability or improbability of an exercise of the election to redeem. In our view of the principal question, however, this element is immaterial; and the evidence submitted is far from sufficient to indicate that the assets of the debtor were of such a character or the negotiations so conclusive that the creditor could without being an incorrigible optimist look forward to the payment of any portion of the deficiency. *United States* v. *White Dental Manufacturing Co.*, 274 U. S. 398. From this point of view no facts appear which make it necessary to modify the conclusion reached above.

Reviewed by the Board.

*Decision will be entered for the respondent.*