NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0107n.06

No. 15-1586

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GWENDOLYN HURST,

      Plaintiff-Appellant,

v.

FEDERAL NATIONAL MORTGAGE
ASSOCIATION, et al.,

      Defendants-Appellees.

_____/

FILED
Feb 23, 2016
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    CLAY and ROGERS, Circuit Judges; THAPAR, District Judge.*

      **CLAY, Circuit Judge.** Plaintiff-Petitioner, Gwendolyn Hurst ("Plaintiff"), appeals from the district court's orders granting Defendants' motion to dismiss and denying Plaintiff's subsequent motion to alter or amend the judgment. Plaintiff's suit challenges the foreclosure on, and subsequent sheriff's sale of, the home in which she currently resides. Plaintiff seeks, inter alia, to quiet title and enjoin Defendants, the Federal National Mortgage Association ("Fannie Mae") and its conservator, the Federal Housing Financing Agency ("FHFA"), from taking any action based on the sheriff's deed that Fannie Mae acquired as a result of the sheriff's sale. For the reasons set forth below, we **AFFIRM** the district court's judgments.

_____

    * The Honorable Amul R. Thapar, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## BACKGROUND

On August 20, 2003, non-party Lue Lee Tomlin ("Tomlin") obtained a reverse mortgage loan from non-party Financial Freedom Senior Funding Corporation. As security for the loan, Tomlin granted a mortgage to Financial Freedom on her home ("the Property"). On September 4, 2012, Financial Freedom assigned the mortgage to non-party One West Bank, FSB ("One West"). Both the mortgage and its assignment to One West were properly recorded.

Prior to the at-issue foreclosure on that mortgage, Plaintiff Gwendolyn Hurst served as Tomlin's caretaker. While acting in this capacity, Plaintiff lived in the Property with Tomlin. Plaintiff's complaint alleges that at some point, "Tomlin promised Hurst that, upon Tomlin's death, [Hurst] could acquire the Property." (R. 1-2 at ¶ 14.) Although Plaintiff's complaint is unclear, the record indicates that Tomlin died at some time prior to November 29, 2012, and that either Tomlin or her estate defaulted on the mortgage prior to October 29, 2012.

One West thereafter foreclosed upon the Property pursuant to Michigan's foreclosure by advertisement statute, M.C.L. § 600.3201 *et seq.*, by publishing notice of the foreclosure in a local newspaper on four occasions between October 29, 2012, and November 19, 2012. In accordance with M.C.L. § 600.3205a(3),[1] written notice was mailed to Tomlin on September 21, 2012. Notice of a forthcoming sheriff's sale was posted on the Property on November 2, 2012, and the sheriff's sale was held on November 29, 2012. At the sale, One West purchased the Property for $15,500. Less than two weeks later, One West sold its interest in the Property to Defendant Federal National Mortgage Association ("Fannie Mae"). Fannie Mae properly recorded its quitclaim deed from that sale.

---

[1] This section of the Michigan Compiled Laws has since been repealed. *See* 2012 Mich. Leg. Serv. P.A. 521 (S.B. 1172).

Plaintiff alleges that "[b]oth prior to and subsequent to the foreclosure sale," she "sought to acquire the Property . . . for the redemption price." (R. 1-2 at ¶¶ 19, 23.) However, when she attempted to do so, she was told by Fannie Mae that she could not acquire the property because "she was not Tomlin's blood relative." (*Id.* at ¶ 19.) On May 29, 2013, Michigan's six-month statutory redemption period passed with no redemption made. *See* M.C.L. § 600.3240. After Fannie Mae instituted eviction proceedings in September 2013, Plaintiff filed this suit in state court challenging the validity of the foreclosure and resulting sheriff's sale. Fannie Mae removed to federal court, and the parties stipulated to a stay of the eviction proceedings pending resolution of the suit.

Plaintiff's complaint alleged two defects in the foreclosure process—namely, "fail[ure] to serve notice on Tomlin's estate" and an invalid chain of title, both in violation of Michigan statutes governing foreclosure by advertisement, M.C.L. § 600.3201 *et seq.* (R. 1-2 at ¶¶ 20–21, 48.) Based on these alleged defects, Plaintiff requested (1) an order rescinding the sheriff's deed and quieting title in her favor; (2) $25,000 in damages for slander of title; and (3) an injunction preventing Fannie Mae from "taking any action based upon the Sheriff's Deed." (*Id.* at ¶¶ 56–73.) Plaintiff also alleged a claim for relief under 42 U.S.C. § 1983, asserting that Defendants' actions in foreclosing on the Property violated her constitutional rights under the Due Process, Equal Protection, and Privileges and Immunities Clauses of the United States Constitution.

On March 10, 2014, Defendant Fannie Mae filed a motion to dismiss Plaintiff's suit pursuant to Federal Rule of Civil Procedure 12(b)(6). After further briefing by the parties, the district court issued an opinion and order granting Fannie Mae's motion and dismissing Plaintiff's suit. Relying on Plaintiff's allegation that "Tomlin promised Hurst that, upon Tomlin's death, [Hurst] could acquire the property," the district court held that Plaintiff lacked

standing to challenge the foreclosure proceedings. Specifically, the court interpreted Plaintiff's allegation to mean that she would merely "be able to purchase the property upon [Tomlin's] death," and that Plaintiff otherwise failed to allege that she possessed "any legally binding instrument that would establish" her right to challenge the foreclosure proceedings. (R. 10, PageID 159.) However, the district court opined that even assuming Plaintiff had standing, her claims would fail on the merits because (1) Plaintiff failed to allege sufficient prejudice to challenge the sheriff's sale; and (2) as a non-governmental actor, Fannie Mae could not be held liable for constitutional violations.

On February 19, 2015, Plaintiff filed a motion to alter or amend the judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b). Plaintiff attached an affidavit to this motion, in which she asserted that Tomlin had "orally assigned" Plaintiff "her rights with regard to her reverse mortgage and/or the Property," and that Tomlin's daughter, Casey Tomlin, had done the same. (R. 13, PageID 182.) Plaintiff argued that the affidavit clarifies that she does have sufficient interest in the Property to establish standing to challenge the foreclosure. Plaintiff also attached a November 25, 2014 FHFA policy announcement relating to the sale of properties held by Fannie Mae.[2] The policy "permit[s] [Fannie Mae] to sell existing . . . properties to any qualified purchaser at the property's fair-market value, as determined by [Fannie Mae]." (*Id.* at 180.) Plaintiff argued that this new policy constitutes a change in law sufficient to warrant alteration of the judgment under Rules 59 and 60.

On April 17, 2015, the district court issued an opinion and order denying Plaintiff's motion to alter or amend the judgment. The court noted that "Plaintiff provide[d] no indication that any of the information provided in her affidavit was unavailable at the time of her complaint

---

[2] On September 7, 2008, Defendant corporation Fannie Mae was placed under the "conservatorship" of Defendant FHFA, a federal agency.

or Defendants' motion to dismiss." (R. 22, PageID 249.) Similarly, the court observed that "[t]he News Release that Plaintiff relies on was issued on November 25, 2014, nearly two months before this Court's January 22, 2015, Order granting Defendants' Motion to Dismiss." (*Id.* at 251.) For those reasons, the court held that Plaintiff failed to demonstrate "newly discovered evidence" or an "intervening change in the controlling law" such that relief under Rules 59 or 60 was warranted. (*See id.* at 249, 251.)

Plaintiff timely appealed from the district court's order granting Defendants' motion to dismiss, as well as from the order denying her motion to alter or amend the judgment.

## DISCUSSION

## I. DEFENDANTS' MOTION TO DISMISS

### Standard of Review and Applicable Law

We review *de novo* the grant of a motion to dismiss for failure to state a claim. *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012). In so doing, we must "accept all factual allegations as true," construing the complaint "in the light most favorable to the plaintiff." *Laborers' Local 265 Pension Fund v. iShares Trust*, 769 F.3d 399, 403 (6th Cir. 2014). To survive a motion to dismiss, plaintiffs must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### Analysis

#### A. Standing

We review a decision regarding a plaintiff's Article III standing *de novo*. *Schultz v. United States*, 529 F.3d 343, 349 (6th Cir. 2008). "The 'well established' law of Article III

standing requires a plaintiff to 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Murray v. U.S. Dep't of Treasury*, 681 F.3d 744, 748 (6th Cir. 2012) (quoting *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 598 (2007)). "We look to the complaint and any accompanying materials in deciding standing questions." *Id.* Moreover, "[a] litigant has standing under Michigan law 'whenever there is a legal cause of action,' including instances when a plaintiff can meet the standards for seeking a declaratory judgment." *El-Seblani v. IndyMac Mortgage Servs.*, 510 F. App'x 425, 428 (6th Cir. 2013) (quoting *Lansing Schs. Educ. Ass'n v. Lansing Bd. of Educ.*, 792 N.W.2d 686, 699 (Mich. 2010)).

Below, the district court concluded that Plaintiff "claims no actual interest in the Property that would result in an injury to her upon foreclosure of the Property." (R. 10, PageID 159.) The district court held that without such an interest, "Plaintiff was merely a tenant who occupied the Property, not an owner," and that she therefore lacked Article III standing to challenge the foreclosure proceedings. (*Id.*) On the other hand, Plaintiff claims the ability to acquire the Property for the redemption price after foreclosure based upon property or inheritance rights. This purported interest renders her more than a mere tenant—if defects in the foreclosure process prevented her from acquiring the Property for the redemption price, she arguably stands to lose not only possession, but also the opportunity to own the Property outright. *See United States v. Currency $267,961.07*, 916 F.2d 1104, 1107 (6th Cir.1990) ("A property interest less than ownership . . . is sufficient to create [Article III] standing."); *Lansing Sch. Educ. Ass'n*, 792 N.W.2d at 699 (holding that even in the absence of a legal cause of action, "[a] litigant may have standing . . . if the litigant has a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large"). Certainly, as discussed

below, the facts alleged in the complaint render the legitimacy of Plaintiff's interest—as well as the allegedly defective foreclosure's effect on that interest—suspect. But those issues go more to the merits of Plaintiff's claims rather than her standing to bring them. *Cf. Roberts v. Hamer*, 655 F.3d 578, 580–81 (6th Cir. 2011) (discussing the "closely related" questions of whether a plaintiff has standing or whether she merely fails to qualify for relief under applicable statutes). Plaintiff accordingly has Article III standing to sue in federal court.

Plaintiff however is not able to recover under Michigan law. Moreover, "we may affirm the judgment of the district court on any ground supported by the record." *La. Sch. Emps' Ret. Sys. V. Ernst & Young, LLP*, 622 F.3d 471, 477 (6th Cir. 2010). We do so here.

**B.** **Plaintiff's Claims Fail on the Merits**

Because Plaintiff's claims regarding title to the Property necessarily depend on her ability to set aside the foreclosure, we first address her challenge to the foreclosure. Under Michigan law, allowing a challenge to a foreclosure after expiration of the post-sheriff's sale redemption period constitutes an equitable remedy. *See El-Seblani*, 510 F. App'x at 428–29. To qualify for this equitable remedy, however, the wrongful foreclosure action "must be brought 'promptly and without delay.'" *Id.* at 429 (quoting *Richard v. Schneiderman & Sherman, PC*, 818 N.W.2d 334, 337 (Mich. Ct. App. 2011), *rev'd on other grounds*, 807 N.W.2d 325 (Mich. 2012)). Michigan courts have dismissed post-redemption period challenges to foreclosures when the plaintiff filed suit after the redemption period expired, *see Richard*, 818 N.W.2d at 337 (citing *White v. Burkhardt*, 60 N.W.2d 925 (Mich. 1953)), and when the plaintiff filed suit some twenty months after the foreclosure sale, *id.* (citing *Fox v. Jacobs*, 286 N.W. 854 (Mich. 1939)).

In this case, the six-month statutory redemption period ended on May 29, 2013. However, Plaintiff did not file her complaint alleging wrongful foreclosure until February 2,

2014—some eight months after expiration of the redemption period, and only after Fannie Mae

instituted eviction proceedings. Neither Plaintiff's complaint, nor her briefing before this Court,

explains her delay in challenging the foreclosure.

Even assuming Plaintiff's suit is timely enough to justify equitable relief, that challenge

fails on the merits. "[I]n order to have a foreclosure set aside after the lapse of the statutory

redemption period," a plaintiff must demonstrate "a clear showing of fraud, or irregularity."

*Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 359–60 (6th Cir. 2013) (quoting

*Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969)). "[N]ot just any type of

fraud will suffice. Rather, '[t]he misconduct must relate to the foreclosure procedure itself.'" *Id.*

at 360 (quoting *El-Seblani*, 510 F. App'x at 429). In addition,

> to prove foreclosure-defect claims, "plaintiffs must show that they were
> prejudiced by defendant's failure to comply with [Mich. Comp. Laws §]
> 600.3204. To demonstrate such prejudice, they must show that they would have
> been in a better position to preserve their interest in the property absent
> defendant's noncompliance with the statute."

*Id.* at 361 (quoting *Kim v. JPMorgan Chase Bank, N.A.*, 493 Mich. 98, 115–16 (2012)). The

requirement that plaintiffs demonstrate prejudice also applies to claims of improper notice. *Id.* at

362.

Plaintiff's complaint alleges two defects in the foreclosure process: "failure to serve

notice on Tomlin's estate," in violation of M.C.L. §§ 600.3204 and 600.3205a, and an invalid

chain of title, in violation of M.C.L. § 600.3204(3). (R. 1-2 at ¶¶ 20–21, 48.) The complaint

thereafter states:

> [T]hese acts were structural defects in the foreclosure process and cause[d] actual
> prejudice to Plaintiff who repeatedly attempted to exercise whatever rights she
> was entitled to, only to be told by Defendants that they would not deal with her.
> In other words, had Defendants complied with MCL §600.3204, Plaintiff would
> have been in a better position to preserve her (and/or the decedent estate's)
> interest in the Property.

(*Id.* at ¶ 49.) However, even assuming that both of Plaintiff's alleged defects constituted fraud or irregularity related to the foreclosure process, Plaintiff failed to plead how these irregularities affected her ability to preserve her interest in the Property.

Plaintiff's alleged interest in the Property was the right to "acquire [it] after Tomlin's death for the redemption price." (*Id.* at ¶ 19.) But according to the complaint, any prejudice to that interest was not borne of defects in Fannie Mae's chain of title; rather, Fannie Mae refused to honor Plaintiff's right to redeem because Plaintiff "was not Tomlin's blood relative." (*See id.* at ¶ 49.) This refusal was supported by law: the Michigan statute governing the post-sheriff's sale right to redeem limits the exercise of that right to "the mortgagor, the mortgagor's heirs or personal representative, or any person that has a recorded interest in the property lawfully claiming under the mortgagor or the mortgagor's heirs or personal representative." M.C.L. § 600.3240(1). Plaintiff does not dispute that Tomlin is the original mortgagor; nor does she claim that she is Tomlin's heir or personal representative. Rather, Plaintiff claims that Tomlin told her that she "could acquire" the property, or that Tomlin otherwise assigned her the right to redeem. However, Plaintiff's alleged interest in the Property was not reduced to writing, let alone recorded as required under the statute. In the absence of such a recorded interest, Plaintiff cannot demonstrate that defects in Fannie Mae's chain of title prejudiced her right to acquire the property for the redemption price.[3] *See* M.C.L. § 600.3240(1); *see also Powell v. Bank of New*

---

[3] Moreover, Plaintiff provides no authority in support of the proposition that the statutory right of redemption governed by M.C.L. § 600.3240 is assignable to persons beyond those explicitly enumerated in subsection (1) of that statute. Although Michigan recognizes a strong public policy favoring the free transfer of interests in real property, *see, e.g.*, 21 Mich. Civ. Jur. Real Property § 39, "the right of redemption is not an interest in the land at all, but a mere personal privilege given by statute to the mortgagor after the land has been sold under the mortgage." *Gerasimos v. Cont'l Bank*, 212 N.W. 71, 73 (Mich. 1927) (quoting 2 Jones on Mortgages § 1038a (7th Ed.)). Similarly, Plaintiff provides no authority in support of the proposition that, assuming the statutory right of redemption is transferrable, no written

*York Mellon*, 616 F. App'x 778, 782 (6th Cir. 2015) (observing that the purpose of chain-of-title challenges to foreclosure proceedings is to mitigate the "risk that plaintiffs may be required to pay the same debt twice").

Plaintiff similarly failed to allege how her interest in redeeming the property would have been better preserved had Fannie Mae "petition[ed] the probate court to open an estate and appoint a personal representative to receive notice." (R. 1-2 at ¶ 20.) That Plaintiff "repeatedly attempted" to redeem the property "[b]oth prior to and subsequent to the foreclosure sale" (*id.* at ¶¶ 23, 49) indicates that she was aware of the foreclosure proceedings and was not personally prejudiced by any defects in notice. *See Conlin*, 714 F.3d at 362 ("When the mortgagor would have been in no better position had notice been fully proper and the mortgagor lost no potential opportunity to preserve some or any portion of his interest in the property, courts uphold a completed foreclosure sale." (internal quotation marks omitted)). Thus, the lack of an estate prejudiced Plaintiff only insofar as she concedes that Tomlin's oral promise was not binding on Fannie Mae, and that an estate was needed to effectuate a legally binding transfer of Tomlin's rights in the property.[4]

In sum, Plaintiff's complaint fails to demonstrate that absent the alleged defects in the foreclosure process, she "would have been in a better position to preserve [her] interest in the

---

conveyance is necessary to execute such a transfer. *Cf. Fid. Mut. Sav. Bank v. Mark*, 767 P.2d 1382, 1385 (Wash. 1989) (en banc) (opining that oral conveyances of the right of redemption would "create great uncertainty in dealing with real property as a judgment debtor could [assign] the right of redemption to any number of people, none of whom would be in a position to verify if they were the sole holders of this valuable right.").

[4] Even if an estate had been opened, it is unlikely that Plaintiff would have been legally entitled to any such transfer: "The clear language of [M.C.L. § 700.140(1)], especially when combined with other provisions of the Revised Probate Code that bar the enforcement of oral wills . . . evidences the Legislature's intent to bar agreements to make a will or devise absent a writing." *In re McKim Estate*, 606 N.W.2d 30, 33 (Mich. Ct. App. 1999).

property." *Id.* at 361. Thus, Plaintiff has failed to demonstrate that she suffered any prejudice from the alleged defects in the foreclosure process, and her challenge to that foreclosure must fail. *Id.*

As a result, Plaintiff's derivative claims regarding title to the Property must also fail. Because there is no basis to void the sheriff's sale or rescind the sheriff's deed, Plaintiff has no basis on which to request that we quiet title to the Property in her favor. *See* M.C.L. § 600.3236; *Piotrowski v. State Land Office Bd.*, 4 N.W.2d 514, 517 (Mich. 1942). Similarly, under Michigan law, "[i]n order to prove [her] slander of title claim, plaintiff must establish that defendant 'maliciously published false matter disparaging [plaintiff's] title, causing [her] special damages.'" *GKC Mich. Theaters, Inc. v. Grand Mall*, 564 N.W.2d 117, 119–20 (Mich. Ct. App. 1997) (quoting *Sullivan v. Thomas Org., P.C.*, 276 N.W.2d 522 (Mich. Ct. App. 1979)). Without legal title, Plaintiff cannot demonstrate that Defendants "published false matter disparaging [*her*] title." *Id.* (emphasis added).

Finally, the district court correctly noted that under Sixth Circuit precedent, "neither Fannie Mae nor Freddie Mac are governmental actors post-conservatorship pursuant to the Supreme Court's decision in *Lebron v. National Railroad Passenger Corporation*, 513 U.S. 374 (1995)." (R. 10, PageID 161 (quoting *Narra v. Fannie Mae*, No. 2:13-CV-12282, 2014 WL 505571, at *4 (E.D. Mich. Feb. 7, 2014))); *see also Mik v. Fed. Home Loan Mortg. Corp.*, 743 F.3d 149 (6th Cir. 2014); *Rubin v. Fannie Mae*, 587 F. App'x 273 (6th Cir. Sept. 29, 2014). On appeal, Plaintiff states that "until this issue is absolutely decided by the Supreme Court the undersigned is not going to convince this Court otherwise." (Pl's Br. at 29.) Because Plaintiff concedes that she loses her constitutional claims on the merits, we do not discuss those claims further.

## II.     PLAINTIFF'S MOTION TO ALTER OR AMEND THE JUDGMENT

### Standard of Review

"We review the denial of a Rule 59(e) motion for an abuse of discretion."  *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 328 (6th Cir. 2011).  The same standard of review applies to the district court's denial of a Rule 60(b) motion.  *E. Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011); *see also Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) ("Rule 60(b) proceedings are subject to only limited and deferential appellate review.").  "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989).

### Analysis

Federal Rule of Civil Procedure 59(e) permits a party to file a "motion to alter or amend a judgment . . . no later than 28 days after entry of the judgment."  "Motions to alter or amend judgment may be granted if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (internal citations omitted).  "To prevail on a motion brought pursuant to Rule 59(e), newly discovered evidence 'must have been previously unavailable.'"  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012) (quoting *GenCorp, Inc.*, 178 F.3d at 834).

Similarly, Rule 60(b)(2) permits the district court to "relieve a party or its legal representative from a final judgment, order, or proceeding" because of "newly discovered evidence that, with reasonable diligence, could not have been discovered . . . ."  To prevail on a motion under Rule 60(b), a "movant must demonstrate (1) that it exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly

would have produced a different result if presented before the original judgment." *Good v. Ohio Edison Co.*, 149 F.3d 413, 423 (6th Cir. 1998) (internal quotation marks omitted).

Importantly, neither of these motions may be used "to raise arguments which could, and should, have been made before judgment issued." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998); *see also Dean v. Bay City*, 239 F. App'x 107, 111 (6th Cir. 2007) ("A motion for reconsideration based on Rule 59(e) or Rule 60(b) is not the proper vehicle for asserting a new claim for the first time.").

In her motion to alter or amend the judgment, Plaintiff included: (1) an affidavit asserting that Tomlin orally assigned her rights in the property to Plaintiff; and (2) a November 25, 2014 FHFA policy announcement relating to the sale of properties held by Fannie Mae. The district court properly denied Plaintiff's motion because Plaintiff could and should have raised these points prior to judgment.

### A. Affidavit

An affidavit attached to Plaintiff's motion to alter or amend the judgment stated the following:

> 2.    Although, to the best of my knowledge, Lue Lee Tomlin did not sign a written document assigning me or bequeathing to me her rights with regard to her reverse mortgage and/or the Property located at 20041 Cooley, Detroit, Michigan (the "Property"), prior to her death Lue Lee Tomlin orally assigned those rights to me.
>
> 3.    Following Lue Lee Tomlin's death, Lue Lee Tomlin's beneficiary, Casey Tomlin ([Lue] Lee Tomlin's daughter) also orally assigned all of her rights to the Property and the reverse mortgage to me.

(R. 13, PageID 183.) As noted by the district court, this affidavit directly contradicts Plaintiff's complaint, which asserts that "Tomlin promised Hurst that, *upon Tomlin's death*, [Hurst] could acquire the Property." (R. 1-2 at ¶ 14 (emphasis added).) Nowhere does the original complaint allege an *inter vivos* assignment of rights in the Property.

The affidavit is also problematic because the above-quoted paragraphs contradict the allegation in Plaintiff's complaint that Defendants should have given notice of the foreclosure to Tomlin's estate. As discussed above, Plaintiff's allegations regarding notice to Tomlin's estate form one of the two bases on which Plaintiff asserts prejudice sufficient to void the sheriff's sale. Yet, such notice would not have been necessary had Tomlin's estate possessed no rights in the Property by virtue of Tomlin's *inter vivos* oral assignment, or by virtue of Casey Tomlin's status as Tomlin's "beneficiary."

Regardless, we agree with the district court that "Plaintiff provide[d] no indication that any of the information provided in her affidavit was unavailable at the time of her complaint or Defendants' motion to dismiss." (R. 22, PageID 249.) Defendants' motion to dismiss explicitly challenged Plaintiff's rights to the Property by arguing that she "has not established that she had any right to purchase the property and does not claim to hold a will affording her any rights to the property." (R. 4, PageID 52.) Presumably, Plaintiff offered her affidavit to refute that argument; but she did so only after judgment was entered against her. Because her affidavit contains only information of which she would have been aware prior to commencement of the suit, Plaintiff cannot demonstrate that the information was "previously unavailable," *HDC, LLC*, 675 F.3d at 615, or that she "exercised due diligence in obtaining" the information prior to judgment being entered, *Good*, 149 F.3d at 423. Rather, "Plaintiff could have included this very affidavit as an exhibit in her response to Defendants' motion to dismiss." (R. 22, PageID 249.)

Thus, Plaintiff's affidavit and the arguments relating thereto were not properly presented on a motion to alter or amend the judgment pursuant to Rules 59 and 60. The district court therefore did not abuse its discretion by declining to alter its judgment based on Plaintiff's affidavit.

**B.     FHFA Policy**

Plaintiff also attached a November 25, 2014 FHFA press release to her motion to amend. Plaintiff argued that this was a "New Policy" that "changed the world of foreclosures" and was "so dramatic that it is analogous to a judicial ruling that reverses the then prevailing rules of law." (R. 13, PageID 175–76.)  In response, the district court noted that

> [t]he News Release that Plaintiff relies on was issued on November 25, 2014, nearly two months before this Court's January 22, 2015, Order granting Defendants' Motion to Dismiss. . . . While briefing on that Motion was completed earlier in 2014, Plaintiff could have notified the Court at any point regarding the change in policy. . . . Plaintiff could have raised this same exact argument prior to the Court's ruling . . . by filing a notice of supplemental authority with the Court, but she failed to do so.

(R. 22, PageID 251.)

Again, we agree with the district court: to the extent Plaintiff considered this new policy to be the linchpin of her claim for equitable relief, she should have alerted the district court to that policy prior to the disposition of her case.  Plaintiff's motion to amend provided no justification for the roughly two-month delay in proffering the press release, nor did it "demonstrate . . . that [she] exercised due diligence in obtaining the information."  *Good*, 149 F.3d at 423; *see also HDC, LLC*, 675 F.3d at 615 (affirming district court's denial of motion to alter or amend where movants "presented no explanation for their failure to come forward with this evidence prior to the district court's dismissal").  The district court therefore did not abuse its discretion by denying Plaintiff's motion on the grounds that the motion "raise[d] arguments which could, and should, have been made before judgment issued." *Engler*, 146 F.3d at 374.

Finally, we agree with the district court that the FHFA policy does not constitute an intervening change in the controlling law.  The policy is, by its own terms, discretionary.  The press release attached to Plaintiff's motion states, in pertinent part:

> The Federal Housing Finance Agency (FHFA) today directed Fannie Mae and Freddie Mac (the Enterprises) to alter one of their policies relating to the sale of real estate owned (REO) properties in their current inventory. The change will *permit* the two companies to sell existing REO properties to any qualified purchaser at the property's fair-market value, as determined by the Enterprises.

(R. 13, PageID 180 (emphasis added).) The press release goes on to state that "[c]ertain property exclusions may apply and will be handled by the Enterprises on a case-by-case basis." (*Id.*) The district court did not "commit[] a clear error of judgment" by declining to alter its judgment based on this permissively-worded press release describing an apparently discretionary new policy. *See Logan*, 865 F.2d at 790.

The district court therefore did not abuse its discretion by declining to alter its judgment based on the November 25, 2014 FHFA press release.

## CONCLUSION

For the reasons stated above, the district court's orders granting Defendants' motion to dismiss and denying Plaintiff's motion to alter or amend the judgment are **AFFIRMED**.